PERKINS ET UX. *v.* STATE OF INDIANA.

[No. 969S218. Filed September 30, 1969.]

*Buck and Bradford,* Indianapolis, *John D. Clouse,* Evansville, and *Ross and East,* Chicago, Illinois, for appellants.

*John J. Dillon,* Former Attorney General, *Ronald S. Timmons,* Former Deputy Attorney General, *Theodore L. Sendak,* Attorney General, *George A. Hillman,* Deputy Attorney General, for appellee.

ARTERBURN, J.—These cases were consolidated for purposes of appeal. They come to us on petition to transfer from the Appellate Court of Indiana. See opinion of Appellate Court reported in 244 N. E. 2d 667.

This action was brought by the appellants against the State of Indiana for injuries resulting when the appellants and family rented a cottage in Lincoln State Park operated and owned by the State of Indiana. In connection with the use of the cottage was a lake and beach under care and control of the state, which the appellant alleges was contaminated by raw sewage and which caused the appellants to become ill, with ensuing costs and damages to them.

The appellee, State of Indiana, filed a motion to dismiss this action instead of a demurrer, claiming the court had no jurisdiction because of the sovereign immunity of the State of Indiana against such actions for injuries resulting in damages and that the complaint could not be amended. A demurrer would have been the proper method of presenting the question involved, but under the circumstances, since no amendment would be possible if the motion is sustained, we shall consider the motion to dismiss as a demurrer. *Calumet Nat'l. Bank v. McCord* (1962), 243 Ind. 626, 189 N. E. 2d 583.

The appellee, State of Indiana, first contends that under the Constitution of this state, the state is immune against suits unless it consents thereto.

Article 4, §24 of the Constitution of the State of Indiana provides as follows:

> "Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

We find no other constitutional provision with reference to suits against the State of Indiana. There is no plain, unequivocal statement in the Constitution that the State of Indiana shall be immune against suits imposing a liability for damages; only an inference might be drawn from the above section. As we read this section it occurs to us that the framers of the Constitution assumed that at common law the State was immune from suit and authorized the legislature to modify such liability to the extent it may see fit, providing that no private acts or special acts were passed for the benefit of some individual. We are dealing here not with a constitutional prohibition, but rather with a principle of common law which has its roots in the ancient common law of England which held "The King can do no

wrong" and hence could not be sued in any court of law. Blackstone's Commentaries on The Law, Gavit's Ed., p. 111.

This principle was carried over in our colonial system of the common law. In fact, a statute in Indiana says that the law governing this state shall include:

> "The common law of England, and statutes of the British Parliament made in aid thereof prior to the fourth year of the reign of James the First . . ."

except those provisions which are local to England and are inconsistent with our customs and our statutes. Burns' Ind. Stat. Anno. § 1-101.

We therefore have presented to us: What is the common law in Indiana with reference to state or sovereign immunity? The state contends that its liability is limited to that fixed in the Acts as amended in 1946, Burns' § 3-3401 (1968 Repl.), which reads as follows:

> "Any person or persons having or claiming to have a money demand against the state of Indiana, *arising,* at law or in equity, *out of contract, express or implied,* accruing within fifteen [15] years from the time of the commencement of the action, may bring suit against the state therefor in the superior court of Marion County, Indiana, by filing a complaint with the clerk of the said court and procuring a summons to be issued by said clerk, which summons shall be served upon the attorney-general of Indiana thirty [30] days before the return day of the summons; and jurisdiction is hereby conferred upon said superior court of Marion County, Indiana, to hear and determine such action, and said court shall be governed by the laws, rules and regulations which govern said superior court in civil actions in the making up of issues, trial and determination of said causes, except that the same shall be tried by all the judges of said court sitting together without a jury: Provided, That suit may be brought upon any claim falling within the class described in this section, without reference to the time when such claim accrued, in case such claim be based upon any written warrant, voucher or certificate properly issued and signed, under authority of law,

by any board of directors or control in charge of the construction of the northern Indiana state prison." (Emphasis added).

This liability, it is argued, is strictly limited to one of a contractual nature. On the other hand, the appellants claim that the liability in this case grows out of a contract by reason of an implied warranty that the services rendered will be wholesome and healthful, and that there was a breach of an implied promise in this case. Historically, the ground covered by breaches of implied warranty and negligence and tort have to some extent overlapped and such area has been a field of continuous confusion in the common law, i.e., whether a particular injury arises in tort or in contract. On the one hand it is urged that there is a breach of an implied promise which is contractual in nature. On the other hand it is urged that there may be negligence arising from the tortious operation involved. We need not attempt to draw that line through this hazy area since in many places it is impossible to find a real division or separation.

In Prosser on Torts, 3rd Ed., § 93, p. 635 it is stated:

"The relation between the remedies in contract and tort presents a very confusing field still in the process of development, in which few courts have made any attempt to chart a path."

There is a more solid and substantial ground for a clear-cut decision in this case without getting mired down in a Serbonian bog, from which we cannot extricate ourselves.

The common law changes. The principle of stare decisis should not always confine our thinking in any case. There has been within the last two or three decades considerable reevaluation and consideration with reference to the principle of sovereign immunity.

Circumstances in bygone ages may have warranted some of the rather strict principles found in the common law rela-

tive to sovereign and charitable immunities. However, the common law of today is not a frozen mold of ancient ideas, but such law is active and dynamic and thus changes with the times and growth of society to meet its needs.

Oliver Wendell Holmes, in a discussion of early forms of liability in his "Common Law", pp. 36, 37, 1881 Ed., makes this statement with reference to its development:

> ". . . The truth is that the law is always approaching, and never reaching, consistency. It is forever adopting new principles from life at one end, and it always retains old ones from history at the other, which have not yet been absorbed or sloughed off. It will become entirely consistent only when it ceases to grow.
>
> . . . . .
>
> Again, the process which I have described has involved the attempt to follow precedents, as well as to give a good reason for them. When we find that in large and important branches of the law the various grounds of policy on which the various rules have been justified are later inventions to account for what are in fact survivals from more primitive times, we have a right to reconsider the popular reasons, and, taking a broader view of the field, to decide anew whether those reasons are satisfactory. . . ."

It has been stated: Why should the individual bear the loss and injury resulting from a negligent act of the government, when a private industry or individual is bound under law to pay for damages for its tortious acts and the government is better able to do so? Insurance has ameliorated the effects of such liability to private individuals and can do so for the state.

We have a statute which permits the state to purchase insurance, and when it does, the insurance carrier may not defend on the ground of sovereign immunity. Burns' Ind. Stat. Anno. § 39-1819.

We have seen through the years the common law principle that charities are immune as to tort liability whittled down

by an enlightened judiciary because there has been no substantial grounds for the grievous wrongs perpetrated by such immunity. No longer may a hospital negligently and carelessly treat a patient without compensation for such tortious injuries. The Supreme Court of this state recently has taken that position. *Harris v. Y.W.C.A. of Terre Haute* (1968), 250 Ind. 491, 237 N. E. 2d 242; *Ball Memorial Hospital v. Freeman* (1964), 245 Ind. 71, 196 N. E. 2d 274.

In eliminating the immunity of charitable institutions from tort liability, Chief Justice Lewis, speaking for this Court in *Harris v. Y.W.C.A.*, *supra*, stated that the principles of stare decisis do not prevent the courts from ever changing the common law, but the common law must grow and develop with the growth of our society in which it operates. The argument that the legislature—not the Court—is the one to make the change, is answered by the fact that the principle was created by the courts as part of the common law, and if error exists or if the principle has become antiquated, it is the duty of the Court to change it. In *Harris v. Y.W.C.A.*, *supra*, it was pointed out that there had been legislative attempts to correct the doctrine of charitable immunity, but they had failed. We point out also that there was an attempt to correct the principles of sovereign immunity in the 1959 Session of the Indiana General Assembly. The legislation passed both houses, but was vetoed by the Governor. S.B. No. 63. Indiana House Journal 1959, Regular Session, p. 1099.

The doctrine of sovereign immunity has been roundly criticized by legal scholars for some number of years. Annotation 161 A. L. R. 367; Law of Torts, Harper, 1933 Ed., p. 665, §296; 34 Yale Law Journal 229. Prosser on Torts, Third Ed., p. 1010; 40 Texas L. Rev. 151; 30 Harv. L. Rev. 20; 31 U. Cinc. L. Rev. 307.

The courts of this state have long held that a municipality, an instrument of the state government, is liable at

least for its proprietary acts where someone has been ■ tortiously injured. *Brinkman v. City of Indianapolis* (1967), 141 Ind. App. 662, 231 N. E. 2d 169; *City of Indianapolis v. Butzke* (1940), 217 Ind. 203, 26 N. E. 2d 754, 27 N. E. 2d 350; *City of Evansville v. Blue* (1937), 212 Ind. 130, 8 N. E. 2d 224; *City of Kokomo v. Loy* (1916), 185 Ind. 18, 112 N. E. 994; 1938 Op. Atty. Gen. 96; 23 Ind. Law J. 475.

We likewise more recently have held that a county is liable where a plaintiff has been injured on a skating rink operated in a recreational park by a county. *Flowers v. Bd.* ■ *Comrs. of Vanderburgh County* (1960), 240 Ind. 668, 168 N. E. 2d 224; *Klepinger v. Bd. Com'rs.* (1968), 143 Ind. App. 155, 239 N. E. 2d 160.

These governmental agencies are in reality a part of the state government. They are supported by taxes and they have been made liable for their tortious acts in the area of proprietary businesses operated by those governmental agencies.

We find we are supported in this reasoning by the case of *Bernardine v. New York* (1945), 294 N. Y. 361, 62 N. E. 2d 604, 161 A. L. R. 364. In that case the legislature waived the governmental immunity of the State of New York without any reference whatever to the subordinate agencies such as municipal corporations. The City of New York was sued in tort for an alleged injury and the high court of that state held that the subordinate instrumentalities and agencies of the state were included in such waiver and were as liable in tort as the state itself. It stated:

"None of the civil divisions of the state—its counties, cities, towns and villages—has any independent sovereignty. . . (cases cited). The legal irresponsibility heretofore enjoyed by these governmental units was nothing more than an extension of the exemption from liability which the state possessed."

It seems to us that this same principle is applicable in the reverse. If the cities, towns and lesser agencies of the

state are liable under a principle of law, consistently then the state, as we have previously said, should be liable for its acts under like circumstances. We are supported in this reasoning by a number of cases from other jurisdictions.

In *People of the State of California v. Superior Court* (1947), 29 Cal. 2d 754, 178 P. 2d 1, 40 A. L. R. 2d 919, the state was held liable on common law principle and the court stated:

"Where the state engages in industrial or business enterprises as distinguished from purely governmental activities, tort liability attaches." *State v. Elliott* (1919; Tex. Civ. App.), 212 S.W. 695; *Youngstown Mining Corporation v. Prout, Commrs.* (1961), 266 Minn. 450, 124 N.W.2d 328; *City of Phoenix v. Lane* (1953), 76 Ariz. 240, 263 P.2d 302; *Minty v. State* (1953), 336 Mich. 370, 58 N. W.2d 106, 108; *Estelle v. Board of Ed., etc.,* (1953), 26 N.J. Super. 9, 97 A.2d 1, modified in 14 N.J. 256, 102 A.2d 44; *City of Manchester v. Manchester Teacher's Guild* (1957), 100 N.H. 507, 131 A.2d 59, 61; *Kentucky v. McCoun* (Ky. App. 1958), 313 S.W.2d 585; *Marie v. Police Jury, et al.* (1964; La. App.), 161 So.2d 407; *Cobia v. Roy City* (1961), 12 Utah 2d 375, 366 P.2d 986.

There may be some logical reason why a government should not be liable for its governmental actions and functions. We do not have that question before us and need not at this time give it further consideration, since the facts in this case show that the injurious act complained of in this case arose out of the proprietary function of the State of Indiana, namely, the furnishing of housing facilities in a state park. 40 A. L. R. 2d 927; *Flowers v. Bd. of Comrs. of Vanderburgh County* (1960), 240 Ind. 668, 168 N. E. 2d 224; It was a commercial project, supposedly operated in a business-like fashion. Certainly the state should not offer facilities which are not clean and wholesome. It seems to us to be consistent in this principle of law and its application in this jurisdiction that if certain municipalities and the county governments are liable to the extent of the

operation of proprietary functions, then there is no reason why the state as a principal should not likewise be liable for its proprietary function. It is of little concern to the injured party whether the injury was caused by a city, county or state. We feel, to be consistent, the common law principle should be applicable to all governmental units alike.

The petition to transfer to this court is granted. The judgment of the trial court is reversed, with directions to overrule the motion to dismiss and for further proceedings not inconsistent with this opinion.

DeBruler, C. J., and Hunter and Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 251 N. E. 2d 30.