John **LICK** and Doris Lick, on behalf of themselves and all other property owners and taxpayers in the County of Roberts and State of South Dakota, similarly situated, Plaintiffs and Appellants,

v.

Irene **DAHL**, Treasurer of Roberts County and Roberts County, Defendants and Appellants.

Nos. 12550, 12570.

Supreme Court of South Dakota.

Nov. 28, 1979.

---

Wallace R. Brantseg of Holland & Brantseg, Sisseton, for plaintiffs and appellants.

David Gilbertson, Roberts County Deputy State's Atty., Sisseton, on brief, for defendants and appellants.

HENDERSON, Justice.

## PARTIES

Plaintiffs-appellants John and Doris Lick, on behalf of themselves and other real property owners and taxpayers similarly situated in the County of Roberts, State of South Dakota, brought suit against the County of Roberts and Irene Dahl, County Treasurer, defendants-respondents. For convenience and clarity, the Licks will be referred to as plaintiffs; that class of taxpayers which plaintiffs seek to represent will be referred to as unnamed plaintiffs;

and the County of Roberts and Irene Dahl will be referred to as defendants.

## ACTION

Plaintiffs seek recovery in a class action suit against defendants for the recovery of real estate taxes alleged to have been illegally assessed and collected. On plaintiffs' motion for certification, the circuit court originally allowed this action to be maintained as a class action under SDCL 15-6-23. Defendants moved for dismissal of the case on the grounds of: (1) lack of subject matter jurisdiction; (2) failure to state a claim upon which relief can be granted; and (3) lack of standing for failure to comply with SDCL 10-11 and 10-18 in bringing the matter before the circuit court. The court denied defendants' motion finding that plaintiffs stated a claim upon which relief could be granted and that compliance with the appeals procedure as contained in SDCL 10-11-44 could not be carried out under this particular set of circumstances, and therefore, plaintiffs could bring an original action in the circuit court under the protest statute pursuant to SDCL 10-27-2. Defendants subsequently moved for summary judgment against all unnamed plaintiffs on the basis that the defendants, under the doctrine of sovereign immunity, are immune from suit by class action for the refund of an alleged illegal tax. Plaintiffs appeal from the order granting defendants' motion for summary judgment. Defendants cross-appeal claiming the court lacks jurisdiction over the subject matter in this case. We affirm.

## FACTS

The named plaintiffs are owners and taxpayers of certain real estate in White Rock and Harmon Townships in Roberts County, South Dakota. On or about May 2, 1975, plaintiffs received from the office of the Director of Assessments of Roberts County a listing of their real estate showing an assessed taxable valuation totaling $48,060 for the tax year 1975-76. On July 8, 1975, the Roberts County Board of Commissioners (board) and the county auditor then

raised the assessed taxable valuation of property in three townships in Roberts County allegedly without notice and in violation of SDCL 10–11–34.[1] At the time the board convened and raised the assessments in question, its powers to act as a board of equalization had expired.[2]

On August 14, 1975, a publication appeared in the *Sisseton Courier,* a legal newspaper, which included the following "notice" of an increased assessment in certain tracts of land situated in Roberts County:

Class A (127–48 & 49), nearly every description changed for a total raise of $170,110.00.

Class A (128–48), nearly every description was raised for a total of $147,490.00.

On or about April 13, 1976, without knowledge of the changes made in the assessed valuation of their real estate, plaintiffs paid the first half of the 1975 taxes. In later comparing their 1975 tax receipts, they noticed that the assessed taxable value of their property situated in Harmon and White Rock Townships had been increased $13,740.00, generating a total tax increase for the year of $523.09. Shortly thereafter, plaintiff John Lick, along with several other taxpayers of Roberts County, met with the board and director of assessments in an effort to have the assessed valuation of their property reduced to the value shown on the 1975 Real Estate Notice and to refund the overpayment of taxes or abate the same. The taxpayers' request was denied.

On October 29, 1976, plaintiffs paid the second half of their real estate taxes under protest, and on November 27, 1976, this action was commenced by serving summons upon Roberts County through service upon James Sanden, a county commissioner, and Irene Dahl, county treasurer.

1. SDCL 10–11–34 requires that no individual assessment of a county resident can be raised without advance notice to such resident except in certain situations not applicable here.

2. SDCL 10–11–25 provides in part:

The county commissioners, or a majority of them, with the county auditor shall constitute a board for the equalization of the assessment of property. . . . Such board shall meet for the purpose of hearing appeals, determining the percentage of true and full value to be used as taxable value and equalizing the assessments of property, annually, on the third Tuesday in June, at the office of the auditor and may continue in session and adjourn from time to time until all properly filed appeals have been determined and equalization completed and *shall adjourn in any event, no later than the first Tuesday in July.* (emphasis added)

## ISSUES

### I.

Whether a taxpayer can bring an original action in circuit court under the protest and suit statute, SDCL 10–27–2, for an alleged failure by the board of county commissioners to give notification of an increase in assessment that is not discovered by the taxpayer until after the time in which the board of county commissioners is statutorily empowered to sit as a board of equalization.

### II.

Whether a taxpayer can maintain a class action on behalf of all other taxpayers similarly situated for the refund of an alleged illegal tax.

## DECISION

### I.

Defendants contend that plaintiffs, John and Doris Lick, must first exhaust their available administrative remedies before recourse to the courts. We agree with the general principle set forth in *Yusten v. Morrison,* 78 S.D. 426, 103 N.W.2d 653 (1960), that if a remedy for an excessive or improper assessment is provided for by statute through proceedings before an officer or board, a taxpayer cannot resort to the courts in the first instance, but must duly avail himself of the statutory remedy. This principle of law is controlling, however, only when the relief sought is one which the board of equalization has the power to correct. The facts in the instant case are distinguishable from that in *Yus-*

*ten v. Morrison,* supra. In *Yusten,* at the time the taxpayer discovered that the assessor had assessed his property in excess of its actual value in direct contravention of the constitution, the board of county commissioners, acting as the board of equalization, was still empowered to correct the error of which the taxpayer complained. Here, plaintiffs were not made aware of the increased assessment of their property until after the board ceased to function as a board of equalization. Furthermore, SDCL 10–11–26 mandates that it is only during the sessions of a board of equalization that a person may apply to the board for the correction of any alleged errors in the listing or valuation of his property. SDCL 10–11–23 also states that appeals before the county board are to be acted upon at its regular equalization meeting.

This case is analogous to the factual situations presented in *Tamco Development Company v. County of Del Norte,* 260 Cal. App.2d 929, 67 Cal.Rptr. 590 (1968), and *Gaumer v. County of Tehama,* 247 Cal. App.2d 548, 55 Cal.Rptr. 777 (1967). In those two cases, the California Courts of Appeal discussed at length the proper remedy to be accorded taxpayers who had not been given notice of an increase in the assessed valuation of their property. The California Courts of Appeal expressly rejected the county's contention that the plaintiffs were required, upon learning of the increase in their assessment, to petition the board of supervisors (commissioners) to call a special meeting as a board of equalization and, in the event of the board's refusal to do so, to seek an extraordinary writ compelling such action. In the present case, as in *Tamco* and *Gaumer,* supra, the plaintiffs did not learn of the increase in the assessed valuation of their property un-

til after the board already sat as a board of equalization on the taxes for that year. As in the case before us, the taxpayers appeared before the board of county supervisors (commissioners) which denied them relief, as soon as they learned of the increase.[3] The California Courts of Appeal concluded in both cases that under these circumstances, plaintiffs had been denied any right to administrative equalization since the assessor's failure to notify them of the increased assessment had prevented them from applying to the board of supervisors (commissioners) until after the expiration of the period within which said body was statutorily empowered to sit as a board of equalization. The court ruled that plaintiffs only remedy lay in the bringing of an action for recovery of the taxes under protest.

■ The board of county commissioners denied plaintiffs' and unnamed plaintiffs' request for refund of taxes over and above the 1975 tax assessment. Such action, however, was not a decision of the board of equalization from which an appeal would lie. SDCL 10–11–44. We specifically reject the inference raised by the court's ruling in *Pierre Water-Works Co. v. Hughes County,* 5 Dak. 145, 37 N.W. 733 (1888), that this particular decision of the board of county commissioners would be appealable under the general appeals statutes contained in SDCL 7–8–27 through SDCL 7–8–31. It must be noted that at the time of the decision in *Pierre Water-Works Co. v. Hughes County,* supra, there was no specific provision for appeal from the decisions of the board of county commissioners sitting as a county board of equalization. Subsequently, by Chapter 124, Laws of 1907, which has now become in substance, SDCL 10–11–44, this statute has been interpreted as the exclusive means from which a deci-

---

3. The actions taken by the taxpayers in this instance do not fall within the purview of *Dakota Lodge No. 1, I.O.O.F. v. Yankton County,* 54 S.D. 402, 223 N.W. 330 (1929), affirmed in 56 S.D. 234, 228 N.W. 238 (1929). There the court stated that the remedy by appeal from a decision of the board of county commissioners on *application* for refund of a tax claimed to be illegal is exclusive, and that an original action to recover the amount of the claimed illegal tax

cannot be maintained. Here plaintiffs are not seeking relief under the refund and abatement statute contained in SDCL 10–18. Furthermore, the Board's denial of plaintiffs' requested relief was not action upon an *application* which would prevent them from bringing an original action under the protest and suit statute. See SDCL 10–18–4 through 11 delineating the requirements of an application.

sion of the board of county commissioners sitting as a board of equalization can be appealed to the circuit court. *Beadle County v. Board of Com'rs of Beadle County,* 62 S.D. 86, 251 N.W. 816 (1933) (concurring opinion).

We conclude that since the county commissioners power to sit as a board of equalization already expired at the time plaintiffs discovered the increase in assessment, the circuit court has jurisdiction to adjudicate the matter presently before it and that the protest and suit statute is the proper remedy in which to seek relief.

## II.

The question of whether a taxpayer can maintain a class action on behalf of all other taxpayers similarly situated for refunds attributable to an alleged illegal tax is one of first impression for this court. The circuit court granted defendants' motion for summary judgment against all unnamed plaintiffs on the basis that the State of South Dakota had not waived its sovereign immunity for the refund of taxes through suit by class action. Therefore, it is necessary to first consider if this action is one against the state in order to determine whether the doctrine of sovereign immunity can properly be invoked.

■ The complaint brings charges against Roberts County and Irene Dahl, treasurer of Roberts County. Plaintiffs rely on *White Eagle Oil & Refining Co. v. Gunderson,* 48 S.D. 608, 205 N.W. 614 (1925), which holds that actions against officers of the state who violate and invade plaintiffs' personal and property rights under color or authority unconstitutional and void, are not suits against the state. It must be pointed out, however, that in such cases the defendant is sued not because he or she is an officer of the government, but as an individual. The complaint does not allege that Irene Dahl ever participated in any activity outside the scope of her official duties as treasurer or that she is being sued individually. The action is against Roberts County, not the individual commissioners. The nature of plaintiffs' suit requires af-

firmative official action on the part of defendants: to refund the portion of taxes attributable to the alleged illegal assessment. "Those cases in which the decrees require by affirmative official action on the part of the defendants, the performance of an obligation which belongs to the state in its political capacity, are suits against the state." 205 N.W. at 617. Therefore, this is a suit against the state. In the absence of constitutional or statutory authority, an action cannot be maintained against the state. *Darnall v. State,* 79 S.D. 59, 108 N.W.2d 201 (1961); *Griffis v. State,* 68 S.D. 360, 2 N.W.2d 666 (1942); *Mullen v. Dwight,* 42 S.D. 171, 173 N.W. 645 (1919).

Article III, § 27 of the South Dakota Constitution provides: "The legislature shall direct by law and in what manner and in what court suit may be brought against the state." There are two exclusive methods by which an aggrieved taxpayer may seek recovery for alleged illegal taxes paid. They are the Refund and Abatement Statute, SDCL 10–18–1, and the Protest and Suit Statute, SDCL 10–27–2. *Security Nat. Bank v. Twinde,* 52 S.D. 352, 217 N.W. 542 (1928).

■ SDCL 10–18–1 authorizes the county commissioners to abate or refund, in whole or in part, assessments or taxes claimed by any person to be invalid for any reason stated therein, and against whom such an assessment has been made or tax levied. It is apparent from a reading of the statute that the only person who can apply for a refund or abatement is the one against whose property an invalid assessment has been made or tax levied. *See also* SDCL 10–18–4 which requires an individual verified application for an abatement or refund.

SDCL 10–27–2 states in part that:

Any person against whom any tax is levied or who may be required to pay the same, who pays the same under protest to the treasurer authorized to collect the same, giving notice at the time of payment of the reasons for such protest may, at any time within thirty days thereafter, commence an action against such treasur-

er for the recovery thereof in any court of competent jurisdiction.

Neither of these statutes expressly provide that suits for tax refunds can be maintained as class actions. Rather, it seems patently clear from a reading of the statutes that any action commenced under these statutes must be brought by each individual on his or her own behalf. A "person," is defined by SDCL 2–14–2(16) as including natural persons, partnerships, associations and corporations, and must be limited to the singular when read in the context of the tax refund statutes. The state has waived its right of sovereign immunity only to the extent provided by the express terms of these statutes. *Darnall v. State,* supra; *Griffis v. State,* supra. Therefore, we conclude that since class actions are not expressly provided for in either statute, SDCL 15–6–23 cannot be employed in suits for tax refunds.

Several jurisdictions have likewise held that class actions cannot be maintained to recover taxes from the state in the absence of a specific statute authorizing it. *Lilian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976); *Charles v. Spradling,* 524 S.W.2d 820 (Mo.1975); *Henderson v. Carter,* 229 Ga. 876, 195 S.E.2d 4 (1972); and *Hooks v. Comptroller of Treasury,* 265 Md. 380, 289 A.2d 332 (1972); *Hansen v. County of Lincoln,* 188 Neb. 461, 197 N.W.2d 651 (1972).

*Menagh v. Elvira School Dist. No. 4,* 50 S.D. 311, 210 N.W. 51 (1926), cited by plain-tiffs for the proposition that taxpayers with a special interest have the right to bring class actions to enforce that interest is inapposite here. The taxpayers in that instance brought an action to annul annexation proceedings and to enjoin levy and collection of taxes, and not to recover alleged invalid or unlawful taxes already paid.

Despite the desirability of class actions under SDCL 15–6–23 in certain circumstances, that statute may not be interpreted to permit a procedure for suing the state not provided within the limited waiver of sovereign immunity in SDCL 10–18–1 and SDCL 10–27–2.

## CONCLUSION

We conclude that the circuit court has jurisdiction to further proceed in the matters before it regarding the named plaintiffs, John and Doris Lick. We affirm the court's order of summary judgment against all unnamed plaintiffs as the statutes do not expressly allow class actions against the state for the refund of taxes.

All the Justices concur.