Bart Lloyd ANDERSON, a minor, by his father and natural guardian, Lloyd C. Anderson, and Lloyd C. Anderson, individually, Appellants,

v.

CITY OF MINNEAPOLIS, Defendant.

JOHNSON BROTHERS HIGHWAY AND HEAVY CONSTRUCTORS, INC., Defendant and Third Party Plaintiff,

v.

STATE of Minnesota, third party defendant, Respondent.

Mitchell PETERSON and Diane Peterson, individually and as husband and wife, Appellants,

v.

Cynthia STANEK, et al., Defendants,

State of Minnesota, Respondent.

Nos. 49665, 49375.

Supreme Court of Minnesota.

July 3, 1980.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and David A. Stafferahn, Minneapolis, for Anderson.

James R. Schwebel and John C. Goetz, Minneapolis, for City of Minneapolis.

Warren Spannaus, Atty. Gen. and Richard B. Allyn, Sol. Gen., Erica K. Jacobson and David W. McKenna, Sp. Asst. Attys. Gen., St. Paul, for State of Minnesota.

Heard, considered and decided by the court en banc.

KELLY, Justice.

In *Peterson v. Stanek*, plaintiff Mitchell Peterson was allegedly injured in a May 26, 1975, accident involving the car he was driving and the car defendant Stanek was driving. He and his wife brought a negligence action against Stanek, and also against the State of Minnesota, based on the alleged "negligent, careless and unsafe design, construction, and maintenance of the intersection" where the accident occurred. The state moved under Minn.R. Civ.P. 12.02(5) for dismissal for failure to state a claim upon which relief may be granted on the ground that it was protected from suit by the doctrine of governmental immunity. The trial court granted the motion and ordered judgment for the state; the plaintiffs now appeal from that order.

In *Anderson v. City of Minneapolis*, plaintiff Bart Anderson was severely injured when, on December 1, 1974, the car driven by his father, plaintiff Lloyd Anderson, collided with the end of a cement railing on a bridge that was designed by Minnesota state engineers. The plaintiffs brought a negligence suit against the City of Minneapolis and the contractor who had constructed the bridge. The contractor then impleaded the State of Minnesota, against whom plaintiff also later made a claim. Although the State at various times moved for summary judgment, for a directed verdict, and for a mistrial, the case proceeded to trial and verdict; the jury finding Lloyd Anderson 66 percent causally negligent, the State of Minnesota 34 percent causally negligent, and the contractor and the City 0 percent causally negligent, and awarding damages. After the verdict, with no further motion, the trial court treated the State's motion for a directed verdict as a motion for judgment notwithstanding the verdict, granted it on the ground that the State was immune from suit, and ordered

judgment for the State. Plaintiff appeals from that order. The State cross-appeals the denial of its motion for a mistrial, and also urges a remand to allow it to make a motion for a new trial on the grounds that certain evidence was improperly admitted and that the damages awarded to Bart Anderson were excessive. We reverse and remand for further proceedings in both cases.

The major issue raised by these cases is whether the common law doctrine of governmental immunity protects the State of Minnesota from liability with regard to claims arising before August 1, 1976, for negligence in the design, construction or maintenance of roads, streets, or highways.

The accidents in the cases under review occurred before August 1, 1976. Therefore, the causes of action arising from these accidents are unaffected by our decision in *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975), in which we prospectively abolished common law governmental immunity with regard to tort claims against the State of Minnesota arising after August 1, 1976.[1] Since the claims against the state in the present actions arose before August 1, 1976, common law immunity applies unless an exception to such immunity is established.

In *Susla v. State*, 311 Minn. 166, 247 N.W.2d 907 (1976), we considered one exception to the state common law tort immunity with regard to those tort actions arising before August 1, 1976. We first noted that before governmental immunity for local governmental units had been abolished in *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962), those units had nonetheless been liable for torts committed in carrying out proprietary activities as opposed to governmental activities. We then determined that the question whether the governmental/proprietary distinction should be applied to *State* common law tort immunity as well as to municipal tort immunity was a matter of

first impression and decided that it should apply:

> We can conceive of no justification for applying the governmental-proprietary distinction to the activities of local governmental units in tort cases but not to the activities of the state, especially when it has been applied to the activities of the state in contract cases. Thus, we hold that the sovereign immunity of the State of Minnesota from tort liability, as it existed up to the effective date of the *Nieting* decision and L.1976, c. 331, did not extend to suits on torts committed in its proprietary capacity.

311 Minn. at 171, 247 N.W.2d at 910.

■ The specific exception to common law governmental immunity involved in *Susla*—that for proprietary activities—is not involved in this case, since the design, construction, and maintenance of highways is a governmental, rather than proprietary, function. *See Hitchcock v. County of Sherburne*, 227 Minn. 132, 135–36, 34 N.W.2d 342, 344 (1948); *Schigley v. City of Waseca*, 106 Minn. 94, 96, 118 N.W. 259, 260 (1908). Appellants, however, suggest that another set of exceptions is applicable.

Under the law as it existed prior to the prospective abolition of common law tort immunity for local governmental units in *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962), there was a complicated set of exceptions to immunity as regards municipal operation of city streets. These exceptions, which presupposed the absence of a statute to the contrary, are presented in fullest form in *Paul v. Faricy*, 228 Minn. 264, 272–74, 37 N.W.2d 427, 433–34 (1949):

> In the use of its highways, streets, and sidewalks, a municipal corporation as a general rule is not liable for injuries to persons or property resulting from its adoption of an improper plan of a highway, street, or sidewalk construction when the defects in the plan are due to a

---

1. In response to the *Nieting* decision, the legislature passed a state tort claims act that, among other things, allowed the State to be sued in tort and put a $100,000 liability limit for

any single claimant. Act of Apr. 20, 1976, ch. 331, § 33, 1976 Minn.Laws 1282 (codified as Minn.Stat. § 3.736).

mere error in the exercise of a bona fide judgment, even though reasonable men might differ as to which plan should have been adopted * * * subject, however, to:

(a) A liability for damages resulting from a defect in the original plan for which there is no reasonable necessity and which is so obviously and palpably dangerous that no reasonably prudent man would approve its adoption, * * *

(b) A liability for damages resulting from a defect in the original plan where such defect is embodied in the construction work and is permitted to remain after the municipality, while still in control of its streets and sidewalks, has reasonable notice that it is a source of danger * * *.

(c) A liability for damages resulting from its negligence in the execution of the plan where the construction work is under the control and supervision of the city * * *.

(d) A liability for damages resulting from negligence in the maintenance and repair of the highway, street, or sidewalk after the construction work has been completed if such highway, street, or sidewalk is then under the municipality's control.

The theoretical basis for these exceptions to the general rule of nonliability was that the Minnesota Legislature, in granting a municipality full control over its streets by statute or charter, impliedly intended to authorize a right of action in tort against such municipalities along the lines of the rule expressed above. *See id.* at 272, 37 N.W.2d at 432 (quoting *Schigley v. City of Waseca,* 106 Minn. 94, 97, 118 N.W. 259, 260 (1908)). It has also been said that municipal liability for negligent maintenance of streets rests upon "special considerations of public policy or upon the doctrine of stare decisis." Peterson, *Governmental Responsibility for Torts in Minnesota* (pt. II), 26 Minn.L.Rev.

480, 487 (1942) (quoting *Snider v. City of St. Paul,* 51 Minn. 466, 472, 53 N.W. 763, 764 (1892).

These exceptions to common-law governmental tort immunity have never been applied to the state (or to governmental entities other than municipalities) in the past. *Id.* at 485, 53 N.W. 763. Rather, past cases of this court have simply assumed that common law governmental immunity would protect the state from liability for negligent design, maintenance, or construction of its highways and roads, without subjecting the question to examination. *See, e. g., Nieting v. Blondell,* 306 Minn. 122, 285 N.W.2d 597 (1975); [2] *Northwestern National Insurance Co. v. State,* 308 Minn. 437, 241 N.W.2d 301 (1976); *Johnson v. Callisto,* 287 Minn. 61, 176 N.W.2d 754 (1970). These cases, however, do not necessarily control the instant case, since it is clear that we have never squarely faced the issue of the policy justifications for applying the exceptions enumerated in *Paul v. Faricy* to municipal corporations and not to the state. Thus, the situation is much like that we faced in *Susla v. State,* 311 Minn. 166, 247 N.W.2d 907 (1976), in which we ruled that common law governmental immunity would not protect the state from liability for negligent acts occurring in the exercise of its proprietary function, even though the general assumption had been that the governmental/proprietary distinction did not apply to the state in that context. *See* Peterson, *Governmental Responsibility for Torts in Minnesota* (pt. I), 26 Minn.L.Rev. 293, 295–96 (1942).

We turn now to the relevant question posed by this case in light of *Susla v. State* —whether the state has shown any justification for applying the *Paul v. Faricy* exceptions to municipal governments and not to the state or other governmental entities. We believe the state has shown no reason for different treatment, and we can conceive of none.

---

2. In *Nieting,* the third party plaintiff alleged that the State had been negligent in designing, constructing, and maintaining chain-link fence median barriers on Interstate Highway 94, and that this negligence had proximately caused

plaintiff's injuries. Although in that case we abolished state immunity for tort claims, we did so *prospectively,* and the trial court's dismissal of the third party complaint on the basis of governmental immunity was affirmed.

If the reason for municipal liability was that municipalities have control over city streets and the power to control defects, the same rationale would apply equally to the state with regard to state-controlled roads. The Indiana Supreme Court has come to a similar conclusion in *Campbell v. State*, 259 Ind. 55, 63, 284 N.E.2d 733, 737 (1972), where it stated:

> Finding no basis for the continuation of the doctrine of sovereign immunity as applicable to the state any more than it is applicable to municipal corporations and counties, we hold that such a defense by the state is not available to any greater extent than it is now available to municipal corporations and counties of this state.

In addition, the author of a recent comprehensive student article on the problem involved in this case has concluded that

> [T]here seems little justification for maintaining immunity for a state [and not for lower governmental entities] when it is considered that "[a]pproximately twice as many fatal accidents occur on State-controlled highways as on non-State."

Note, *State Liability for Highway Defects*, 27 Emory L.J. 337, 345–46 (1978) (quoting U.S. Dept. of Transportation, An Evaluation of the Highway Safety Program IV 14 (1977)). We therefore hold that the exceptions to common law governmental tort immunity enumerated in *Paul v. Faricy*, apply to other governmental entities, including the state, as well as to municipalities.

By reaching this result, we need not address the issue whether the application of the *Paul v. Faricy* exceptions to municipalities, but not to the State, would violate the equal protection clause of the fourteenth amendment to the United States Constitution by treating differently victims of the negligence of municipalities and victims of the negligence of the State. In *Kossak v. Stalling*, 277 N.W.2d 30, 34 (Minn.1979), we held that a statute requiring that suit be commenced by a tort victim against a municipality within one year of the notice of claim was not rationally related to any legitimate governmental purpose, and was thus unconstitutional. We further stated in dictum,

> Even if the commencement of suit requirement furthered a governmental objective, we have great doubt whether there exists a proper basis for distinguishing between a person injured by a vehicle belonging to a municipal corporation and one belonging to a private corporation *or anyone else.*

277 N.W.2d at 34 n. 6 (emphasis added).

In *Peterson v. Stanek*, the trial court ordered the dismissal of the claim against the state for failure to state a claim upon which relief could be granted. Since the only question on review is whether the claim is barred by governmental immunity, that order must be reversed.

In *Anderson v. City of Minneapolis*, the case was submitted to the jury under the theory of the first exception enumerated in *Paul v. Faricy*—that the plaintiff's injuries resulted from a defect in the original plan of the Johnson Street bridge and the approach thereto for which there was no reasonable necessity and which was so obviously and palpably dangerous that no reasonably prudent man would approve its adoption. The jury was essentially instructed on this theory and the State does not contend that the evidence is insufficient to sustain a verdict under this theory if it applies. Before the case was submitted to the jury the State made a motion for a directed verdict on the ground that it was protected by governmental immunity. The jury then brought back its verdict attributing 34 percent of the causal negligence to the State. Six days after the jury verdict, the court, sua sponte, treated the State's motion for a directed verdict as a motion for judgment notwithstanding the verdict and granted it.

Because this ruling was in the State's favor, the State failed to formally make a subsequent motion for a new trial to have the trial court review several alleged errors that occurred during the course of the trial. Ordinarily the failure to raise errors of law in an alternative motion for a

new trial precludes their consideration on appeal. *See e. g., Dunshee v. Douglas*, 255 N.W.2d 42, 48 (Minn.1977); *Gruenhagen v. Larson*, 310 Minn. 454, 457–8, 246 N.W.2d 565, 569 (1976). 10A Dunnell Digest *Judgments* § 5085(1) (3d ed. 1971). Since, however, the State did not have a full opportunity to present post-trial motions prior to the trial court's ruling, we will remand to the trial court to allow the State to raise any issues appropriate to an alternative motion for a new trial. The State is, of course, precluded from raising the issue of governmental immunity, which is governed by the holding in this case.

Both cases are reversed and remanded.

TODD, J., not participating.