Heidi L. SENGER, Plaintiff
and Appellant,

v.

HULSTRAND CONSTRUCTION, INC.,
and the North Dakota State Highway
Department, Defendants and Appellees.

Civ. No. 10155.

Supreme Court of North Dakota.

June 10, 1982.

Phillip J. Brown, Bismarck, for plaintiff and appellant.

Robert E. Lane, Asst. Atty. Gen., N.D. State Highway Dept., Bismarck, for defendant and appellee N.D. State Highway Dept.

PAULSON, Justice.

Heidi L. Senger brought an action in the District Court of Burleigh County against the North Dakota State Highway Department [Highway Department] and Hulstrand Construction, Inc. [Hulstrand] for damages incurred as a result of injuries allegedly sustained in a head-on collision at a construction site on Highway Interstate 94, west of the Memorial Bridge between Bismarck and Mandan, North Dakota. In an amended complaint filed September 21, 1981, Senger alleged that the Highway Department was negligent in failing to ensure that adequate safety measures, including signs, lights, and barricades, were employed at such site.

On September 24, 1981, the Highway Department made a motion to dismiss the complaint on the ground that the doctrine of sovereign immunity barred the suit. The

motion was granted and a judgment dismissing the action was entered on November 18, 1981. Senger appeals from this judgment. We affirm.

This case presents us with the question of whether or not the rule of sovereign immunity from tort liability should be abrogated.

The starting point of our inquiry is Article I, § 9 of the North Dakota Constitution. This provision, which was embodied in the North Dakota Constitution of 1889 as Article I, § 22,[1] provides:

> "*Section 9.* All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. *Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct.*" [Emphasis added.]

The construction consistently placed upon this provision is that it invests the Legislature with the power to modify or waive the State's immunity from suit. In *State ex rel. Shafer v. Lowe*, 54 N.D. 637, 210 N.W. 501, 503 (1926), for example, the court, after acknowledging the principle of sovereign immunity, discussed its interconnection with former Article I, § 22 of the North Dakota Constitution:

> "The framers of the state Constitution, while recognizing this principle [sovereign immunity], relaxed the rigid rule somewhat, and left the extent of the modification to be largely determined by the Legislature."

*And see Spielman v. State*, 91 N.W.2d 627, 630 (N.D.1958); and *Dunham Lumber Co. v. Gresz*, 70 N.D. 455, 295 N.W. 500, 502 (1940). It is equally well established that no suit may be maintained against the State unless the Legislature has authorized it. *Wright v. State*, 189 N.W.2d 675 (N.D.1971); *Stark*

*County v. State*, 160 N.W.2d 101 (N.D. 1968); *Spielman, supra; Johson v. Brunner*, 71 N.D. 446, 1 N.W.2d 871 (1942); *Dunham Lumber Co., supra; Ford Motor Co. v. State*, 59 N.D. 792, 231 N.W. 883 (1930); *Watland v. North Dakota Workmen's Comp. Bureau*, 58 N.D. 303, 225 N.W. 812 (1929); *State ex rel. Shafer v. Lowe, supra; Wirtz v. Nestos*, 51 N.D. 603, 200 N.W. 524 (1924).

Both parties agree that Article I, § 9 invests the Legislature with the power to modify the rule of sovereign immunity. Does Article I, § 9 of the North Dakota Constitution vest this power exclusively in the Legislature or may the court also alter the principle of sovereign immunity? Here the parties' agreement ends. Senger argues that sovereign immunity is a principle of the common law which has its roots in the ancient English maxim that "the King can do no wrong". She contends that Article I, § 9 does not deprive the court of its power to alter this odious creature of the common law and urges us to obliterate it.

In support of Senger's position, she cites *Mayle v. Pennsylvania Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), a decision which abrogated the rule of sovereign immunity in Pennsylvania. In *Mayle*, the Pennsylvania Supreme Court rejected a contention that a provision of the Pennsylvania Constitution,[2] similar to Article I, § 9 of the North Dakota Constitution, deprived the courts of jurisdiction to hear cases against the Commonwealth absent legislative authorization. *Mayle, supra* 388 A.2d at 716–717, adopted the reasoning in *Biello v. Pennsylvania Liquor Control Board*, 454 Pa. 179, 189, 301 A.2d 849, 854 (1973) [Nix, J., joined by Roberts, J., dissenting]:

> " 'The Constitution is . . . neutral—it neither requires nor prohibits sovereign immunity. It merely provides that the presence or absence of sovereign immunity shall be decided in a non-constitutional

---

1. This provision, formerly numbered Article I, § 22, was renumbered in 1981 pursuant to legislative mandate. § 46–03–11.1, N.D.C.C.

2. "Suits may be brought against the Commonwealth in such manner, in such courts and in

such cases as the Legislature may by law direct." [Article I, § 11 (in pertinent part), Pennsylvania Constitution] *Mayle v. Pennsylvania Dept. of Highways, supra* 388 A.2d at 716.

manner. . . . The [Commonwealth's argument] mistakenly concludes that since the framers recognized the need for resolution of these issues they thereby mandated the doctrine itself. . . . [I]t is an unwarranted conclusion to assume from the grant of the power of consent [to suit] to the legislative branch that this was implicitly an abrogation of the court's traditional powers to abolish common law principles when they no longer meet the needs of the time.' "

In *Mayle, supra* 388 A.2d at 717, Justice Roberts, writing for four members of the court,[3] then stated:

"The history of the adoption of this section [on consent to sue the Commonwealth] indicates that the Framers of 1790 intended to allow the Legislature, if it desired, to choose cases in which the Commonwealth should be immune, but did not intend to grant constitutional immunity to the Commonwealth."

The *Mayle* court's conclusion, that the Pennsylvania Constitution does not establish absolute sovereign immunity but grants the Legislature the power to waive it is not entirely incompatible with the construction placed upon Article I, § 9 of the North Dakota Constitution over the years.[4] *See State ex rel. Shafer v. Lowe, supra.* In *Dunham Lumber Co. v. Gresz, supra* 295 N.W. at 502, for example, Judge Morris, after noting that sovereign "immunity has been recognized in a number of cases in this jurisdiction", explained that "the state's immunity is not absolute". He continued:

"The framers of the North Dakota Constitution saw fit to relax the rule of absolute immunity and vest in the legislature, by section 22 . . . , the power to prescribe

the cases in which suit may be brought against the state."

In *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), however, this court intimated that the doctrine of sovereign immunity is constitutionally mandated. The *Kitto* court ruled that Article I, § 9, did not preclude the abrogation of governmental immunity, *i.e.*, immunity for cities, school districts, and other governmental subdivisions. In so doing, we distinguished between governmental and sovereign immunity and stated, in *Kitto, supra* 224 N.W.2d 801, that:

"It is consistent with our constitutional framework to recognize that there are characteristics of sovereignty which attach to the operations of state government but not to various other independent or semi-independent governmental bodies."

■ Assuming, for the sake of argument, that the Constitution does not mandate sovereign immunity, its clear language does grant to the Legislature the power to determine in what manner, courts, and cases suit may be brought against the State. In *Worthington v. State*, 598 P.2d 796 (Wyo. 1979), the Wyoming Supreme Court considered the effect of a similar constitutional provision[5] on its power to abrogate the doctrine of sovereign immunity. A review of the relevant cases, *i.e., Mayle, supra*, and *Perkins v. State*, 252 Ind. 549, 251 N.E.2d 30 (1969), led the court to draw this conclusion in *Worthington, supra* 598 P.2d at 803:

". . . a constitutional provision of the character of ours may not establish absolute sovereign immunity, but, as is much recognized, the existence of the rule is left to the legislature to determine what

---

**3.** Three members of the Pennsylvania Supreme Court dissented in the *Mayle, supra* decision.

**4.** *See, also Perkins v. State*, 252 Ind. 549, 251 N.E.2d 30 (1969) (construing similar provision) [framers of Constitution assumed that at common law the State was immune from suit and authorized Legislature to modify liability]. *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962) (similar provision) [abrogating sovereign immunity as a substantive defense but stating that decision did not affect the

State's sovereign right under Constitution to be sued only upon its consent]. *Cf. Muskopf v. Corning Hosp. Dist.*, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961) [similar provision provides merely for a legislative consent to suit].

**5.** "Suits may be brought against the state in such manner and in such courts as the legislature may by law direct." [Article 1, § 8 (in pertinent part), Wyoming Constitution. *Worthington v. State, supra* 598 P.2d at 800.

areas and under what conditions it would consent to suit for damages suffered by an individual and under which a recovery might be had by an individual for the wrongs of the State."

We construe Article I, § 9, of the North Dakota Constitution as a delegation to the Legislature of the power to regulate the State's amendability to suit and not as an invitation to the court to invade that domain. *See Worthington, supra* 598 P.2d at 804.

Indeed, our Legislature has not been unaware of its constitutional prerogative to regulate the State's sovereign immunity.[6] In response to the decision in *Kitto, supra*, the 1975 Legislative Assembly enacted Chapter 295, 1975 Session Laws, a temporary measure governing the liability of political subdivisions. Section 2 of such chapter provided that "The sovereign immunity of the state is not waived in any manner by this Act, and the provisions of this Act shall not be construed to abrogate the immunity of the state."

Chapter 295(1)(5)(b) of the 1975 S.L., provided that the term "Political subdivision" shall not include the State of North Dakota. Chapter 32–12.1, of the North Dakota Century Code, concerning liability of political subdivisions, was enacted in 1977. Section 32–12.1–15, N.D.C.C., authorizes the State, or any State agency, bureau, or department to insure against liability for the protection of the State and its employees. If the State or any State agency purchases insurance, the purchaser waives its immunity to suit only to the types of insurance coverage purchased and only to the extent of the policy limits of the coverage. § 32–12.1–15(2), N.D.C.C. Section 32–12.1–03(4), N.D.C.C., reflects a definite legislative intent to

retain sovereign immunity in the absence of insurance coverage.[7] *See also* § 32–12.1–02(5)(b), N.D.C.C.

Article I, § 9 of the North Dakota Constitution entrusts the matter of sovereign immunity to the Legislative Assembly.

The judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON and VANDE WALLE, JJ., concur.

SAND, Justice (concurring specially).

I concur in Justice Paulson's opinion for the additional reason that the state constitution is an instrument of limitations rather than an instrument of grants. *State ex rel Agnew v. Schneider*, 253 N.W.2d 184 (N.D. 1977), *Verry v. Trenbeath*, 148 N.W.2d 567 (N.D.1967) and the numerous cases cited in support of this principle of law.

Without the provisions contained in Section 9, Article I, of the North Dakota Constitution, the legislature under its plenary authority could have modified or waived governmental immunity. Furthermore our government does not require, nor does it engage in, idle acts. This raises the rhetorical question: If the legislature had authority to provide how, when and under what conditions the state could be sued or waive governmental immunity without the constitutional provisions contained in Section 9, Article I, why was it put in the constitution? The obvious answer is that the people wanted and did limit this authority to the legislature. This conclusion is in complete harmony with the basic concept that state constitutions are instruments of limitations as distinguished from the United States Constitution which is an instrument of grants.

VANDE WALLE, J., concurs.

---

**6.** For reports of legislative studies on various aspects of immunity, see 1981 Report of the North Dakota Legislative Council, *Government Officer and Employee Liability Study*, 74; 1979 Report of N.D. Legislative Council, *Budget Problems Related To Governmental Immunity Legislation*, 29; 1977 Report of N.D. Legislative Council, *Governmental Immunity Study—Political Subdivisions*, 173; 1971 Report of the N.D. Legislative Council, *Payment of Claims by the State to its Citizens*, 83.

**7.** Section 32–12.1–03(4), N.D.C.C. provides: "The sovereign immunity of the state is not waived in any manner by this chapter, and this chapter shall not be construed to abrogate the immunity of the state." This provision, of course, does not defeat the explicit waiver contained in § 32–12.1–15(2), N.D.C.C.