Jonathan Carl PATCH, Plaintiff and Appellant,

v.

David SEBELIUS; Sherman Graber, d/b/a Graber Trucking; Ray Hunter; Industrial Builders, Inc.; Philip Stremick, d/b/a Philip N. Stremick Construction; Walter Hjelle, State Highway Commissioner, in his official capacity, North Dakota State Highway Department, and the State of North Dakota, Defendants and Appellees.

Civ. No. 10161.

Supreme Court of North Dakota.

June 10, 1982.

Lloyd H. Noack, and Damon E. Anderson, Grand Forks, for plaintiff and appellant; argued by Damon E. Anderson, Grand Forks.

Robert E. Lane, Asst. Atty. Gen., N. D. State Highway Dept., Bismarck, for defendants and appellees N. D. State Highway Dept. and State of N. D.

PAULSON, Justice.

On July 9, 1981, Jonathan Carl Patch filed suit in the District Court of Grand Forks County against the North Dakota State Highway Commissioner, Walter Hjelle, in his official capacity; the Highway Department; and the State of North Dakota,[1] seeking to recover for personal injuries allegedly suffered in a collision on U. S. Highway 2, approximately 25 miles west of Grand Forks.

Patch, in his amended complaint, claimed that the Highway Commissioner was negligent in failing to provide adequate warnings of the "dangers involved" at the site of his collision. He further alleged negligence on the part of the Highway Department and the State in failing to "properly supervise construction work and require installation of warning signs or other safety devices" at the Highway 2 construction site. On July 22, 1981, the State made a motion to dismiss on the basis of sovereign immunity. The trial court treated the State's motion to dismiss as a motion for summary judgment. Summary judgment in favor of the State was entered on January 4, 1982. Patch appeals from this judgment. We affirm.

The fundamental question raised in this appeal, the abrogation of sovereign immunity, was addressed today in the companion case of *Senger v. Hulstrand Construction, Inc.*, 320 N.W.2d 507 (N.D.1982). Like *Senger, supra*, Patch argues that we should abolish the rule of sovereign immunity. Our resolution of this contention in *Senger* is controlling in this case. Patch, however, has raised several additional issues for our consideration:

1. Does § 32–12.1–15 of the North Dakota Century Code[2] violate the Equal Protection and Due Process Clauses of the State and Federal Constitutions by conditioning a tort victim's right to recover from the State upon the State's purchase of liability insurance; and

2. Should this court make an exception to the rule of sovereign immunity and provide for state liability for negligence in the design and maintenance of state highways?

It is Patch's position that victims of state tortfeasors constitute a group of similarly

---

1. Patch, in addition to suing the State and David Sebelius, also sued Sherman Graber, d/b/a Graber Trucking; Ray Hunter; Industrial Builders, Inc.; Philip Stremick, d/b/a Philip N. Stremick Construction; Walter Hjelle, State Highway Commissioner, in his official capacity, North Dakota State Highway Department, and the State of North Dakota.

2. Section 32–12.1–15, N.D.C.C., provides, in pertinent part:

   "*32–12.1–15. State agencies authorized to purchase insurance.*

   "1. The state or any state agency, bureau, or department may insure against liabilities provided by this chapter for its own protection and for the protection of any state employee. If a premium savings will result therefrom, the policies of insurance may be taken out for more than one year, but in no event beyond a period of five years.

   "2. If the state or any state agency, bureau, or department shall purchase insurance pursuant to this section, the purchaser shall waive its immunity to suit only to the types of insurance coverage purchased and only to the extent of the policy limits of the coverage. Provided, the purchaser or its insurance carrier is not liable for claims arising out of the conduct of a ridesharing arrangement, as defined in section 8–02–07. . . ."

situated individuals. He contends that § 32–12.1–15, N.D.C.C., creates an arbitrary and indefensible classification among these tort victims—those injured by state agencies which have purchased insurance and thus waived their immunity and those injured by state agencies which have not purchased insurance, thereby retaining their immunity.[3] According to Patch, this classification violates the Equal Protection and Due Process Clauses of the Federal[4] and State Constitutions.[5]

■ We begin with the well-established principle that an enactment of the Legislature is presumed to be valid. This presumption is conclusive unless it is clearly shown that the statute contravenes the State or Federal Constitution. *Dorgan v. Kouba*, 274 N.W.2d 167 (N.D.1978); *Melland v. Johanneson*, 160 N.W.2d 107 (N.D. 1968). Moreover, if a statute is susceptible of two constructions, one of which would render it of doubtful constitutionality and one of which would not, the latter must be adopted. *State v. Knittel*, 308 N.W.2d 379 (N.D.1981).

We deem the intermediate standard of scrutiny the appropriate test for the review of the classification of tort victims of insured state agencies and tort victims of non-insured state agencies. Thus, we must decide whether or not there is a close correspondence between the statutory classification and the legislative goals. *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979). [intermediate standard applied in determining whether or not statutory provision imposing 90-day notice requirement in regard to actions against cities for defective streets and bridges denied equal protection]. *Contra, Stanhope v. Brown City*, 90 Wis.2d 823, 280 N.W.2d 711 (1979) [employing rational basis test]. *And see Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978) [middle level test

used in reviewing Medical Malpractice Act]; *Johnson v. Hassett*, 217 N.W.2d 771 (N.D. 1974) [middle level test used in suit challenging constitutionality of automobile guest statute].

■ The legislative intent of Chapter 32–12.1, N.D.C.C., is set forth in § 32–12.1–01, N.D.C.C.:

"*32–12.1–01. Legislative intent.* This chapter creates additional powers and optional and alternative methods for the single and specific purpose of enabling political subdivisions to pay and to compromise claims and judgments, to issue bonds to fund and satisfy the same, to levy taxes in amounts necessary for such purposes without respect to limitations otherwise existing, and to compromise judgments and make periodic payments on such compromised amount."

Section 32–12.1–15, N.D.C.C., buried within the Liability of Political Subdivisions Chapter 32–12.1, N.D.C.C., is clearly not intended as a comprehensive response to the question of sovereign immunity. It appears that the primary purpose of the statute authorizing state agencies to purchase insurance, § 32–12.1–15, N.D.C.C., is the protection of the state agency and its employees. The State has suggested that the insurance waiver statute is intended mostly to protect employees who may become personally liable for actions occurring during the workday. The waiver of immunity contained in subsection 2 of § 32–12.1–15, N.D.C.C., does, on the other hand, manifest some legislative concern for the victims of state tortfeasors.

■ Today, in *Senger v. Hulstrand Construction, Inc.*, 320 N.W.2d 507 (N.D. 1982), we held that Article I, § 9 of the North Dakota Constitution entrusts the matter of sovereign immunity to the Legislative Assembly. Once sovereign immunity

3. In affidavits, the State Highway Commissioner and the acting state purchasing agent stated that no insurance policy had been purchased which covered the liabilities claimed in this action.

4. U.S.Const.Amend. XIV, § 1, provides, in part: "nor shall any state deprive any person of life, liberty or property, without due process of law,

nor deny to any person within its jurisdiction the equal protection of the laws."

5. N.D.Const.Art. I, § 21, provides in part: "nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens".

has been waived, legislative enactments must conform to the Equal Protection and Due Process guarantees of the State and Federal Constitutions. *Stanhope v. Brown City, supra*; *cf. Herman v. Magnuson, supra* [90-day notice requirement in regard to actions against cities for defective streets and bridges upheld against constitutional challenge]. It is well established that a legislative enactment is not unconstitutional merely because it is not all-embracing and does not attempt to cure all the evils within its reach. Legislative enactments regarding sovereign immunity implicate extremely broad considerations of public policy and governmental administration. *Sousa v. State*, 115 N.H. 340, 341 A.2d 282 (1975).

■ We conclude that there is a sufficiently close correspondence between the statutory classification and the limited legislative goals to satisfy the requirements of the Equal Protection Clauses of both the State and Federal Constitutions. *See generally Seifert v. Standard Paving Co.*, 64 Ill.2d 109, 355 N.E.2d 537 (1976); *Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015 (1976), *appeal dismissed* 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976).

We also reject Patch's contention that the State has acted unreasonably and arbitrarily in violation of the Due Process Clauses of the State[6] and Federal Constitutions.[7]

■ Finally, Patch urges us to carve out an exception to the rule of sovereign immunity and permit recovery against the State for the negligent design, construction, and maintenance of state highways. In *Anderson v. City of Minneapolis*, 296 N.W.2d 383 (Minn.1980), the Minnesota Supreme Court held that the specific exception to governmental immunity regarding municipal oper-

ation of city streets should be applied to the State's operation of its highways. The posture of the *Anderson* case is unique, the plaintiffs having been injured before the date on which the court's prospective abolition of sovereign immunity had occurred. *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975).

The theoretical basis for the governmental immunity exception recognized in *Anderson* is that the Minnesota Legislature, in granting a city full control over its streets by statute or charter, impliedly intended to authorize a right of action in tort against a city for the negligent operation of city streets. *Anderson, supra* 296 N.W.2d at 386. The North Dakota rule that cities are charged with full responsibility in the matter of their streets is not based upon the theory of an implicit legislative consent to suit. *See Ludlow v. City of Fargo*, 3 N.D. 485, 57 N.W. 506, 508 (1893). In *Ludlow, supra*, the court relied upon the fact that the city has full and absolute control over its streets as a reason to impose liability upon the city. In light of our holding in *Senger, supra*, that the power to authorize suits against the State is constitutionally vested in the Legislature, we decline to impose a rule of municipal liability upon the State.

The judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

6. N.D.Const.Art. I, § 12, provides, in part: "... No person shall be ... deprived of life, liberty or property without due process of law."

7. *See* Fn. 4, *supra*.