#25922-a-JKK
**2011 S.D. 84**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

WILLIAM ADRIAN; JESSE BAYSINGER;
DAVID CUNY; SCOTT CUNY; SCOTT
EDOFF; DUAINE FETTER; WAYNE
FORTUNE; JERRALD HEINRICHS, RICK
HORTON; WAYNE HUETHER; WILLIAM
HUETHER; DONALD JOBGEN; DUANE
JOBGEN; MARVIN JOBGEN; CHARLES
KRUSE; DANIEL KRUSE; KEVIN KRUSE;
PHILIP KRUSE; KUDRNA RANCH; BERTT
MAY; LARRY MAY; LYLE O'ROURKE;
DARRELL PETERSON; RASMUSSEN-
LEHMAN LLC; RICHARD RAUSCH; JOHN
SIDES; TUBBS LAND AND CATTLE LLC;
RAYMOND AND BERTHA WARNER; JIM
WHITCHER; MONTE WHITCHER; WALT
WHITCHER; RALPH WHITE; WAYNE
WHITE; GARY WILLIAMS; DENNIS
ZELFER; ALVIN ZIETLOW,                          Plaintiffs and Appellants,

          v.

JEFF VONK, SECRETARY OF SOUTH
DAKOTA DEPARTMENT OF GAME, FISH
AND PARKS; and THE SOUTH DAKOTA
DEPARTMENT OF GAME, FISH AND
PARKS; and BILL EVEN, SECRETARY
OF SOUTH DAKOTA DEPARTMENT OF
AGRICULTURE; and THE SOUTH DAKOTA
DEPARTMENT OF AGRICULTURE,                      Defendants and Appellees.
                                    * * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *
THE HONORABLE JANINE M. KERN
Judge
* * * *

ARGUED OCTOBER 03, 2011

OPINION FILED **12/14/11**

JAMES P. HURLEY of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota

DOUGLAS A. ABRAHAM
TIMOTHY M. ENGEL of
May, Adam, Gerdes & Thompson LLP
Pierre, South Dakota

Attorneys for plaintiffs
and appellants.

Attorneys for defendants
and appellees.

#25922

KONENKAMP, Justice

[¶1.]      Plaintiff ranchers sued the State because of ongoing damage to their property from incursions of prairie dogs from public lands.  Relying on multiple statutes requiring the State to manage and control prairie dog populations, plaintiffs requested injunctive relief, abatement, and damages.  After considering cross-motions for summary judgment, the circuit court granted plaintiffs summary judgment and ordered a trial on damages.  When the case was reassigned, the State moved the new judge to reexamine the first judge's ruling.  On reconsideration, the court vacated the first summary judgment and granted summary judgment for the State.  Plaintiffs appeal.

**Background**

[¶2.]      Plaintiffs are ranchers in western South Dakota.[1]  They own and lease acreage abutting public lands.  Prairie dogs from these public lands have encroached upon their property, causing lost income, additional expenses, and property damage.  Plaintiffs brought suit against the South Dakota Department of Game, Fish, and Parks (SDGFP), the South Dakota Department of Agriculture

---

1.      Plaintiffs include: William Adrian, Jesse Baysinger, David Cuny, Scott Cuny, Scott Edoff, Duaine Fetter, Wayne Fortune, Jerrald Heinrichs, Rick Horton, Wayne Huether, William Huether, Donald Jobgen, Duane Jobgen, Marvin Jobgen, Charles Kruse, Daniel Kruse, Kevin Kruse, Philip Kruse, Kudrna Ranch, Bertt May, Larry May, Lyle O'Rourke, Darrell Peterson, Rasmussen-Lehman, LLC, Richard Rausch, John Sides, Tubbs Land and Cattle, LLC, Raymond and Bertha Warner, Jim Whitcher, Monte Whitcher, Walt Whitcher, Ralph White, Wayne White, Gary Williams, Dennis Zelfer, and Alvin Zietlow.

-1-

(SDDA), and the secretaries of these departments (collectively the State). Plaintiffs alleged that the State failed to comply with multiple statutes requiring it to manage and control prairie dogs. *See* SDCL 41-11-15; SDCL 34A-8-7; SDCL 40-36-3.1. They also alleged that the State's failure to act constituted a nuisance under SDCL 34A-8A-5, giving plaintiffs a cause of action against the State. Plaintiffs sought injunctive and monetary relief.

[¶3.] The State moved for summary judgment and argued that plaintiffs' claims were barred by the Supremacy Clause and the doctrine of sovereign immunity. In regard to the Supremacy Clause, the State claimed that the reintroduction of the black-footed ferret in 1994 on certain public lands in South Dakota by the United States Department of the Interior caused the increased prairie dog population, which federal action the State could not control. On sovereign immunity, the State asserted that the control and management of prairie dogs is a discretionary act, immune from liability, and no statute contains an express waiver by the Legislature of the State's sovereign immunity. Finally, the State argued that plaintiffs failed to comply with the notice provisions of SDCL 3-21-2, in that neither the commissioner of administration nor the attorney general received notice of plaintiffs' suit before they brought their action. Plaintiffs responded with a cross motion for summary judgment.

[¶4.] Circuit Judge A.P. Fuller held hearings in May and July 2010, addressing the issues of sovereign immunity and the Supremacy Clause. At the conclusion of the July hearing, Judge Fuller issued an oral ruling, granting plaintiffs' motion for summary judgment. He declared that SDCL 34A-8-7, SDCL

40-36-3.1, and SDCL 41-11-15 impose statutory obligations upon the State to control and manage the prairie dog population. Then, because SDCL 34A-8A-5 gives a property owner a nuisance cause of action when the failure to control or manage prairie dogs causes them to encroach on the owner's property and cause injury, Judge Fuller ruled that the State expressly waived its sovereign immunity. He held that the remedies of SDCL 34A-8A-6 (civil action, injunctive relief, abatement, etc.) were available to plaintiffs. He found the Supremacy Clause inapplicable because, regardless of the federal actions in reintroducing the black-footed ferret, the State still had a duty to control and manage the prairie dog population. Finally, he ruled that the notice provisions of SDCL 3-21-2 did not apply, and if they did, plaintiffs substantially complied. Judge Fuller denied the State's motion for summary judgment, granted the plaintiffs' motion, and ordered a trial on damages. The State petitioned unsuccessfully for an intermediate appeal.

[¶5.]        When Judge Fuller could not proceed with the case, it was assigned to Circuit Judge Janine M. Kern. In November 2010, the State moved for reconsideration of Judge Fuller's summary judgment decision. It argued that "Judge Fuller's bench decision incorrectly ignored [the State's] sovereign immunity arguments, which should be and are dispositive of the case." The State also asserted that plaintiffs failed to provide notice as required by SDCL 3-21-2. It averred that "[i]f Judge Fuller's decision is allowed to stand, substantial taxpayer dollars will have to be expended to prepare for and try the damages aspect of this case, [and] the time and attention of numerous State officers and employees will be

diverted from their day-to-day duties and responsibilities to the citizens of South Dakota."

[¶6.]	Plaintiffs argued that Judge Kern did not have the authority to reconsider Judge Fuller's summary judgment ruling, as it was a final decision. But Judge Kern determined that she had the authority because Judge Fuller's decision included only a limited analysis of sovereign immunity. On that issue, she ruled that plaintiffs' claims implicated discretionary functions, and nothing in SDCL 34A-8A-6 specifically authorized suit against the State. Judge Kern found no merit to the State's argument that notice was insufficient. Thereafter, she vacated Judge Fuller's decision, granted the State's motion for summary judgment, and dismissed plaintiffs' suit with prejudice.

[¶7.]	Plaintiffs appeal, asserting multiple issues, which we restate as follows: (1) did Judge Kern have the legal authority to reconsider and vacate Judge Fuller's decision? (2) if Judge Kern had the authority, did she err when she granted the State's motion for summary judgment on grounds of sovereign immunity?

**Analysis and Decision**

[¶8.]	We need not address the question whether Judge Kern had the authority to reexamine Judge Fuller's ruling on summary judgment. Regardless of which side prevailed, our standard of review remains the same. Summary judgment is examined de novo: we give no deference to either judge's ruling. *Bickner v. Raymond Twp.,* 2008 S.D. 27, ¶ 4 n.1, 747 N.W.2d 668, 670 n.1. Likewise, whether sovereign immunity has been waived and whether an act is discretionary or ministerial are questions of law, also reviewed de novo. *Bickner,*

2008 S.D. 27, ¶ 10, 747 N.W.2d at 671 (citations omitted); *Hanson v. S.D. Dept. of Transp.*, 1998 S.D. 109, ¶ 18, 584 N.W.2d 881, 885.

[¶9.] Plaintiffs rely on multiple statutes that they contend grant them the right to sue the State on its failure to manage and control prairie dogs. They argue that SDCL 41-11-15(2) mandates that the State keep the prairie dog population within an established acreage limit based on the 1988 United States Forest Service prairie dog management plan. That plan allows prairie dogs to populate 6,180 acres in the Conata Basin and Buffalo Gap National Grasslands. The statute provides that "if future increases in prairie dog acres are needed, a funding mechanism shall be established to provide financial compensation to landowners suffering lost income." SDCL 41-11-15(2). Because the prairie dog population has exceeded the acreage limit in SDCL 41-11-15, and because prairie dog incursions have caused significant devastation to plaintiffs' lands, they seek compensation.

[¶10.] Plaintiffs assert that the Legislature directed the State to "establish programs" to manage and control prairie dogs at public expense on private lands if those prairie dogs encroach upon private land from contiguous public lands. *See* SDCL 34A-8-7. They similarly rely on SDCL 40-36-3.1, which requires the SDGFP to establish a program to control prairie dogs on private lands, a program to be financed from revenues in the State animal damage control fund.

[¶11.] When SDCL ch. 34A-8A was enacted in 2001, the black-tailed prairie dog was removed from the list of declared pests. SDCL 34A-8A-7. But under SDCL 38-22-1.2(7), prairie dogs may be reclassified as pests under certain conditions, including when "the population of prairie dogs within the state, including the tribal

lands, exceeds the one hundred forty-five thousand acre level[.]" Because the SDGFP estimated that the prairie dog population covered 625,410 acres in 2006, plaintiffs contend the State's failure to manage and control the prairie dogs constitutes a nuisance under SDCL 34A-8A-5. That statute gives private landowners a cause of action for nuisance when one engages in a practice that allows a species of management concern (i.e., prairie dogs) to encroach upon or injure the property of another. Relying on the State's statutory obligation to control and manage prairie dogs, and the undisputed evidence that the State has failed to maintain the prairie dog population within the range identified by its laws, plaintiffs contend that the State waived sovereign immunity and can be sued.

[¶12.] Under South Dakota's Constitution, "[t]he Legislature shall direct by law and in what manner and in what court suit may be brought against the state." S.D. Const. art. III, § 27; *see also Lick v. Dahl,* 285 N.W.2d 594, 599 (S.D. 1979). An *express* waiver of sovereign immunity is required. *Lick*, 285 N.W.2d at 599; *Pourier v. S.D. Dept. of Rev. & Reg.*, 2010 S.D. 10, ¶ 14, 778 N.W.2d 602, 606. A waiver is not necessary, however, if the aggrieved party can establish that the acts complained of are ministerial rather than discretionary. *Hanson v. S.D. Dept. of Transp.*, 1998 S.D. 109, ¶ 23, 584 N.W.2d 881, 886-87.

[¶13.] Nothing in SDCL 41-11-15, SDCL 34A-8-7, or SDCL 40-36-3.1 *expressly* gives plaintiffs the right to sue the State for its failure to manage or control prairie dogs. SDCL 41-11-15 deals with the State's power to "participate in programs" with the federal government for the reintroduction of the black-footed

ferret.[2] While the statute provides that before the State can participate certain conditions must be met, including strictly adhering to the existing prairie dog management plan and establishing a funding mechanism for compensating landowners for lost income, there is no language in this statute expressly waiving

---

2.    SDCL 41-11-15 provides:

> The Department of Game, Fish and Parks and the Department of Agriculture may participate in programs to reintroduce the black-footed ferret if the following conditions are being met:
>
> (1) Areas containing prairie dogs but not having the potential to support black-footed ferrets shall be identified, evaluated and declared ferret-free;
>
> (2) The existing United States Forest Service Prairie Dog Management Plan for the Conata Basin, Buffalo Gap National Grasslands shall be strictly adhered to, and if future increases in prairie dog acres are needed, a funding mechanism shall be established to provide financial compensation to landowners suffering lost income;
>
> (3) No additional land may be acquired for ferrets through condemnation, and the multiple use concept of the United States Forest Service shall be continued;
>
> (4) The initial ferret reintroduction efforts shall be concentrated within the boundaries of Badlands National Park, and once release techniques are refined, the prairie dog management plan on the Buffalo Gap National Grasslands is functioning and local citizens have had the opportunity to view the progress, then reintroduction efforts may be expanded to the grasslands; and
>
> (5) The United States Fish and Wildlife Service shall attempt to provide for the continued meeting on a regular basis during and after the ferret reintroduction of the local level committee consisting of representatives of the United States Forest Service, Pine Ridge Indian Reservation, United States National Parks Service, United States Fish and Wildlife Service, affected state agencies, private organizations, and local landowners.

sovereign immunity or providing a right to sue the State. Similarly, no waiver language can be seen in SDCL 34A-8-6, -7 or SDCL 40-36-3.1.[3] These statutes merely order the State to establish programs to control prairie dogs. No language identifies "in what manner and in what court suit may be brought against the state." *See* S.D. Const. art. III, § 27.

[¶14.]     Moreover, the acts mandated by these statutes are clearly discretionary. There is no absolute, certain, or imperative act "involving merely the execution of a specific duty arising from fixed designated facts or the execution of a

---

3. SDCL 34A-8-6 provides:

> The Department of Game, Fish and Parks and the Department of Agriculture shall perform those acts necessary for the conservation, management, protection, restoration, and propagation of endangered, threatened, and nongame species of wildlife.

SDCL 34A-8-7 provides:

> The secretary of agriculture and the secretary of game, fish and parks shall establish programs, with legislative approval and may enter into cooperative agreements with federal and state agencies or with private persons as deemed necessary for the management of nongame, endangered, or threatened species. The secretaries shall establish and conduct control programs at state expense on private lands that are encroached upon by prairie dogs from contiguous public lands.

SDCL 40-36-3.1 provides:

> The secretary of game, fish and parks shall establish a program to continue prairie dog control on private lands at the written request and with the cooperation of the participating landowner. The program is to be funded from revenues in the state animal damage control fund.

set task imposed by a law prescribing and defining the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion[.]" *Hanson,* 1998 S.D. 109, ¶ 23, 584 N.W.2d at 886 (quoting 57 Am. Jur. 2d *Mun., Cnty., Sch. & State Tort Liability* § 120, at 132-33 (1988)). In sum, there are no "hard and fast" rules guiding the State's actions for managing the prairie dog population. *See id.*

[¶15.]     The last statutes plaintiffs rely on are in SDCL chapter 34A-8A. That chapter deals with animals having both a need for control and protection. It provides that the SDDA and the SDGFP "shall establish . . . a list of species of management concern[.]" SDCL 34A-8A-2. After such determination is made, the departments may render advice and assistance, including:

> (1) Providing information to the public and property owners regarding the species of management concern and its characteristics, ecosystem values, and habitat; and
>
> (2) Providing assistance in the development of conservation plans or control projects regarding the species of management concern.

SDCL 34A-8A-4. Prairie dogs have been declared a species of management concern. ARSD 41:10:03:01. SDCL 34A-8A-5 provides that "[t]he following acts or omissions constitute nuisances: (1) Engaging in practices which allow or cause a species of management concern to encroach upon the property of another or injure or endanger the property of another; or (2) Failure to control the species of management concern thereby causing encroachment on the property of another or causing injury to or endangering the property of another." And SDCL 34A-8A-6

makes available the nuisance remedies of SDCL chapter 21-10, "including injunctive relief and recovery of damages, and abatement." SDCL 34A-8A-6.

[¶16.] According to the plaintiffs, chapter 34A-8A gives them the right to sue the State for its failure to control prairie dogs and for engaging in a practice that allowed and caused prairie dogs to encroach upon and damage plaintiffs' property. The State, on the other hand, maintains that absent *express* language in SDCL chapter 34A-8A indicating that suit may be brought against the State, sovereign immunity applies.

[¶17.] Plaintiffs' suit seeks affirmative official action and damages from the State for not meeting its statutory obligation to control and manage prairie dogs. But no statute expressly authorizes suit against the State for its failure to manage or control the prairie dog population. In *Pourier* and *Lick,* specific statutory language allowed taxpayers to seek a refund against the State or governmental body and dictated in what manner. *See Pourier*, 2010 S.D. 10, 778 N.W.2d 602 (addressing SDCL ch. 10-59); *Lick*, 285 N.W.2d at 599 (addressing SDCL ch. 10-27; SDCL ch. 10-18). The statutes here, however, merely identify what acts constitute a nuisance when dealing with a species of management concern. Therefore, despite the nuisance language of SDCL 34A-8A-5, sovereign immunity has not been waived. Further, the acts mandated by the statutes are not ministerial. SDCL chapter 34A-8A does not set forth acts or tasks "that involve obedience to instructions" or that "demand no special discretion, judgment or skill." *See Hanson*, 1998 S.D. 109, ¶ 23, 584 N.W.2d at 886.

[¶18.] Having declared that the acts mandated by the statutes cited by plaintiffs are discretionary and because the State is protected from suit by sovereign immunity, we need not address whether the Supremacy Clause applies or whether the circuit court erred when it ruled that plaintiffs substantially complied with the notice provisions of SDCL 3-21-2.

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and O'BRIEN, Circuit Court Judge, concur.

[¶21.] O'BRIEN, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.