#26154, #26161-a-LSW

**2012 S.D. 78**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JORGENSEN FARMS, INC., d/b/a
JORGENSEN LAND & CATTLE
PARTNERSHIP,                                    Plaintiff,

    v.

COUNTRY PRIDE COOPERATIVE, INC.,
A SOUTH DAKOTA CORPORATION,              Defendant, Third-Party
                                        Plaintiff and Appellant,

    v.

AGRILIANCE, LLC; DAKOTA
GASIFICATION COMPANY,
and AGRIUM U.S. INC.,                    Third-Party Defendants and
                                        Appellees,

    and

CHARLES BAKER TRUCKING
COMPANY, and SPAANS TRUCKING,
INC.,                                   Third-Party Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TRIPP COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2012

OPINION FILED **11/20/12**

AMY AMUNDSON
THOMAS D. JENSEN of
Lind, Jensen, Sullivan &
  Peterson, PA
Minneapolis, Minnesota

Attorneys for defendant, third-party plaintiff and appellant.


MARGO D. NORTHRUP of
Riter, Rogers, Wattier &
  Brown, LLP
Pierre, South Dakota

    and

EMILY MURPHY
Stillwater, Minnesota

Attorneys for third-party defendant and appellee Agriliance N.O.R. #26161.


PAUL E. BACHAND of
Schmidt, Schroyer, Moreno,
  Lee & Bachand, PC
Pierre, South Dakota

TODD LANGEL of
Faegre & Benson, LLP
Des Moines, Iowa

    and

KRISTIN R. EADS of
Faegre & Benson, LLP
Minneapolis, Minnesota

Attorneys for third-party defendant and appellee Agrium.


STEVEN J. OBERG of
Lynn, Jackson, Shultz &
  Lebrun, PC
Rapid City, South Dakota

Attorneys for third-party defendant and appellee Dakota Gasification.

WILBUR, Justice

[¶1.]        Jorgensen Farms (Jorgensen) sued Country Pride Cooperative (Country Pride) alleging that Country Pride sold Jorgensen fertilizer contaminated with rye damaging its 2007 wheat crop.  Country Pride settled with Jorgensen but preserved its claims against third-party defendants Agriliance, Agrium, and Dakota Gasification Co. (Dakota Gas).  The trial court granted the third-party defendants' motions for summary judgment.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]        Jorgensen grows certified and registered winter wheat seed.  During late spring or early summer 2007, rye plants contaminated Jorgensen's winter wheat crop.  According to Jorgensen's expert, Jorgensen suffered a loss of $556,070 as a result of the rye contamination as Jorgensen was unable to sell the crop as certified seed, and instead, sold the wheat for a lower price as commodity grain.

[¶3.]        Jorgensen, who believed the source of the contamination was fertilizer it purchased from Country Pride, brought suit against Country Pride to recover damages.  Subsequently, Country Pride brought third-party complaints against a number of parties alleging that, if Jorgensen proved that the fertilizer it purchased from Country Pride was contaminated, the rye contamination must have occurred in the chain of fertilizer distribution.[1]  Country Pride alleges that the third-party

---

1.    Country Pride concedes that it only joined the Agriliance-Charles Baker Trucking (Baker Trucking)-Dakota Gas chain of distribution, and thereby excluded other parties who supplied or transported ammonium sulfate and urea to Country Pride during 2006 and who could also have been joined in the lawsuit.

defendants' negligence, breach of contract, and/or breach of warranty entitles Country Pride to indemnification or contribution.[2]

[¶4.] Country Pride settled with Jorgensen and the two carriers named as third-party defendants: Charles Baker Trucking (Baker Trucking) and Spaans Trucking, Inc. The only remaining issue is whether Country Pride is entitled to indemnification or contribution from any or all remaining third-party defendants: Agriliance, Agrium, or Dakota Gas.

[¶5.] The remaining third-party defendants were involved in selling either, or both, ammonium sulfate and urea, the two chemicals used in mixing the fertilizer. Agriliance, a sales broker, and Country Pride entered into a verbal agreement whereby Country Pride would purchase ammonium sulfate from Agriliance. As the intermediate seller, Agriliance never possessed or handled the ammonium sulfate. Rather, Agriliance purchased the ammonium sulfate from third-party defendant Dakota Gas. Agrium is a producer of both ammonium sulfate and urea. Country Pride dismissed its claim based on Agrium's sale of ammonium sulfate but, on appeal, is pursuing a claim for the urea sold by Agrium.

[¶6.] The trial court granted summary judgment in favor of Agriliance, Agrium, and Dakota Gas, reasoning that Country Pride failed "to provide a specific

---

2. Contribution and indemnification, although similar, are distinct remedies. A right to contribution arises when "[a] party to a joint, or joint and several, obligation . . . satisfies more than his share of the claim against all[.]" SDCL 20-1-6. In contrast, "indemnity is an 'all-or-nothing' proposition where the party seeking indemnification must show an absence of proportionate fault to shift the entire liability[.]" *Weiszhaar Farms, Inc. v. Tobin*, 522 N.W.2d 484, 492 (S.D. 1994).

fact upon which a jury could find a party responsible without resorting to speculation." Country Pride appeals. We review Country Pride's remaining claims against each Agriliance, Agrium, and Dakota Gas separately to determine whether summary judgment was appropriate as to each.[3]

## STANDARD OF REVIEW

[¶7.]        In reviewing a trial court's grant or denial of summary judgment under SDCL 15-6-56(c), we must view evidence in the light most favorable to the non-moving party and decide both "'whether the moving party has demonstrated the absence of any genuine issue of material fact'" and whether the trial court correctly decided all legal questions. *Bertelsen v. Allstate Ins. Co.*, 2011 S.D. 13, ¶ 15, 796 N.W.2d 685, 692 (quoting *Advanced Recycling Sys., L.L.C. v. Se. Prop., Ltd.*, 2010 S.D. 70, ¶ 10, 787 N.W.2d 778, 783). We make these determinations de novo, with "'no deference to the [trial] court's ruling.'" *Highmark Fed. Credit Union v. Hunter*, 2012 S.D. 37, ¶ 7, 814 N.W.2d 413, 415 (quoting *Adrian v. Vonk*, 2011 S.D. 84, ¶ 8, 807 N.W.2d 119, 122).

---

3.      The trial court noted Country Pride provided a "handful" of "evolving theories." Alternative theories are allowed by SDCL 15-6-8(e)(2), which provides:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both.

## ANALYSIS AND DECISION

[¶8.]     On appeal, the parties dispute whether Country Pride has set forth sufficient evidence to survive summary judgment. Country Pride concedes that it has not provided direct evidence as to which of the three third-party defendants, if any, are responsible for the rye contamination. However, Country Pride argues, despite the absence of direct evidence, it has provided sufficient circumstantial evidence to survive summary judgment.

[¶9.]     Country Pride's position at the summary judgment hearing was that circumstantial evidence of "inspection negligence" established that rye entered the ammonium sulfate due to Baker Trucking's negligence in its failure to properly inspect its delivery trucks. With this backdrop in mind, we examine the evidence presented in this case, viewing it "in [the] light most favorable to the nonmoving part[ies][.]" *Cashman v. Van Dyke*, 2012 S.D. 43, ¶ 6, 815 N.W.2d 308, 311.

[¶10.]     **1.     Agriliance is not liable as a matter of law under either a breach of contract or negligence theory.**

[¶11.]     Country Pride presents alternative theories under which Agriliance could be liable for the damages to Jorgensen's wheat crop. First, Country Pride argues that a September 17, 2006 delivery of ammonium sulfate by Baker Trucking, which Country Pride ordered from Agriliance, contained the rye contamination. Second, Country Pride argues that Agriliance supplied approximately 65.3% of Country Pride's ammonium sulfate prior to September 2006 and that this supply contained the contamination.

[¶12.]     There are disputed facts regarding the date the first load of ammonium sulfate was delivered to Country Pride by Baker Trucking.[4]  In addition, Country Pride offered the testimony of former Baker Trucking employee, David Sherman, regarding the presence of rye in Baker Trucking's trucks.[5]  When the evidence is viewed in the light most favorable to Country Pride, the non-moving party, the date of delivery, and whether the trailer used by Baker Trucking was contaminated are disputed facts that should ordinarily be decided by a jury.  In this case, however, resolution of those disputed facts is not determinative as to any liability on the part of Agriliance.

[¶13.]     Country Pride is suing Agriliance for breach of warranty[6] and negligence.  Country Pride conceded that the ammonium sulfate was defect-free when it was manufactured and shipped from Dakota Gas.  In light of this

---

4.     Country Pride and Agriliance dispute when the first load of ammonium sulfate was delivered to Country Pride.  Based on its timeline of events, Country Pride asserts that it received its first load of ammonium sulfate from Baker Trucking on September 17 or 18.  Agriliance argues that Country Pride's own receipt, or "hand ticket," which contains handwritten notations providing a date of "9/14/06" and "delivered by Ted @ 1:00 PM," establishes a September 14 delivery date.  Country Pride concedes that if Baker Trucking delivered the ammonium sulfate to Country Pride on September 14, Agriliance cannot be held liable.

5.     Sherman, after initially stating that he had never come across rye seed in any of his deliveries, recanted, and stated that Charles Baker, owner of Baker Trucking, told Sherman he had rye in his fields and that, if Baker had gotten rye in his fields, "there's a good possibility that rye got in between the two floors" of the trailer that delivered ammonium sulfate to Country Pride, and therefore, was the source of Jorgensen's rye contamination.

6.     Country Pride advances that Agriliance violated the implied warranty of merchantability (SDCL 57A-2-314); the implied warranty of fitness for a particular purpose (SDCL 57A-2-315); and an express warranty by affirmation, promise, description, sample (SDCL 57A-2-313).

concession, Agriliance cannot be liable as a matter of law for breach of warranty because the goods were as warranted from the manufacturer when the goods were shipped. *See Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 256 (S.D. 1976) *overruled on other grounds by First Premier Bank v. Kolcraft Enters., Inc.*, 2004 S.D. 92, 686 N.W.2d 430 (stating that, in a case with claims for breach of warranty, negligence, and strict liability involving a valve manufactured by Honeywell, "plaintiff [injured homeowner] has the burden of showing that the defect existed when the product left the manufacturer's hands").

[¶14.] Additionally, Country Pride's negligence claim against Agriliance is based upon its failure to inspect the shipper's, Baker Trucking, trucks. Agriliance, however, cannot be liable for negligence because it is the carrier's duty, under state law, to inspect its truck.[7] *Berry v. Chicago, M. & St. P. Ry. Co.*, 24 S.D. 611, 124

---

7. The parties disagree whether the Carmack Amendment affects the outcome of this case. The Carmack Amendment governs the liability of carriers and freight forwarders for damage to goods during transportation. 49 U.S.C. §§ 11706 and 14706. Although this case involves transportation by truck, both motor carriers and rail carriers, are "carriers" under the Carmack Amendment. And, as the Supreme Court has explained, "in cases where it applies," the Carmack Amendment

> imposes upon receiving rail carriers and delivering rail carriers liability for damage caused during the rail route under the bill of lading, regardless of which carrier caused the damage. Carmack's purpose is to relieve cargo owners of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.

*Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, __ U.S. __, __, 130 S. Ct. 2433, 2441, 177 L. Ed. 2d 424 (2010) (internal citations and quotations omitted). *See generally Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 145-46 (2nd Cir. 2010) (considering whether a

(continued . . . )

N.W. 859, 862-63 (1910). Country Pride has settled with and dismissed Baker Trucking from this lawsuit. Based on the undisputed material fact that the ammonium sulfate was defect-free when manufactured and shipped, as conceded by Country Pride, and that Agriliance did not have a duty to inspect the carrier, Agriliance is entitled to summary judgment as a matter of law.

[¶15.] Country Pride offered the possibility that the doctrine of alternative liability could apply in this case.[8] However, because Country Pride did not join all potential defendants, i.e., all parties who produced, shipped, manufactured, or sold ammonium sulfate or urea to Country Pride in 2006, even if this Court were to consider adopting the doctrine, it would not be applicable for that reason. *See Bradley v. Firestone Tire and Rubber Co.*, 590 F. Supp. 1177, 1179 (D.S.D. 1984) (quoting *Starling v. Seaboard Coast Line R.R. Co.*, 533 F. Supp. 183, 188 (S.D. Ga.

---

( . . . continued)

United States Supreme Court case involving rail carriers is applicable to a case involving motor carriers and freight forwarders).

We first observe that the Carmack Amendment does not apply here because Agriliance is neither a carrier nor freight forwarder. *See* 49 U.S.C. §§ 13102(3), (8). Second, even if the Carmack Amendment applied, it would only impose liability on the carrier, Baker Trucking, not Agriliance, a sales broker. *See, e.g.*, *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 117-18 (2nd Cir. 1999).

8. The alternative liability theory is

> [w]here the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

Restatement (Second) of Torts § 433B(3) (1965).

1982) (stating that "[u]nder alternative liability, however, all the possible wrongdoers responsible for the injury must be before the Court, and the negligent acts must have been committed simultaneously")).

[¶16.]     **2.     Country Pride's claims against Agrium are barred by (a) Country Pride's failure to give notice, (b) the economic loss doctrine, and (c) the statute of limitations.**

[¶17.]     Country Pride argues, in the alternative, that if the ammonium sulfate it purchased from Agriliance was not the source of the rye contamination, the urea Country Pride purchased from Agrium in fall 2006 caused the contamination. Country Pride concedes that the more likely source of the rye contamination is the fertilizer sold by Agriliance. Despite this concession, Country Pride believes it has set forth sufficient facts for a jury to determine that Agrium is the source of the rye contamination.

[¶18.]     Country Pride asserts that it can prove that: (1) it purchased 100% of its August 2006 urea from Agrium; (2) Jorgensen purchased 66,090 pounds of urea from Country Pride on September 14; (3) on one or more occasions, Agrium used Drueke Trucking, a party not joined in this action, to deliver urea to Country Pride; and (4) that Country Pride has previously discovered contaminated urea in Drueke Trucking deliveries.[9] Thus, according to Country Pride, a reasonable jury could infer that the urea supplied by Agrium in August 2006 contained the offending rye.

---

9.     Dale Vogt, a Country Pride employee, testified that, on several occasions, he discovered corn contaminated urea in fertilizer delivered by Drueke. Vogt did not testify, nor does Country Pride allege, that it previously discovered rye contaminated urea delivered by Drueke.

[¶19.] In response, Agrium argues that summary judgment was appropriate for four reasons: (1) the trial court correctly concluded that there was no genuine issue of material fact regarding the source of the contamination; (2) Country Pride's breach of warranty claims fail because Country Pride did not give reasonable notice as required by SDCL 57A-2-607(3); (3) Country Pride's tort claims are barred by the economic loss doctrine; and (4) Country Pride's claims are barred by the statute of limitations contained in SDCL 57A-2-725.

[¶20.] This Court has often stated that, "'[i]f there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.'" *Murray v. Mansheim*, 2010 S.D. 18, ¶ 4, 779 N.W.2d 379, 382 (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745). We hold that Country Pride's breach of warranty claims are barred by its failure to give reasonable notice; its tort claims are barred by the economic loss doctrine; and its indemnification and contribution claim is barred by the statute of limitations. Therefore, we affirm summary judgment in favor of Agrium.

> *(a) Country Pride's breach of warranty claims against Agrium are barred by the notice requirement contained in SDCL 57A-2-607(3).*

[¶21.] Both Country Pride and Agrium agree that Agrium's sale of urea to Country Pride was a sales transaction, and thus governed by the Uniform Commercial Code (UCC). *See City of Lennox v. Mitek Indus. Ins.,* 519 N.W.2d 330, 332 (S.D. 1994) (stating that "[i]n order for the UCC to govern the transaction, the sale must be for a sale of goods"). Accordingly, Country Pride must comply with the notice requirement contained in SDCL 57A-2-607(3)(a). This statute provides, "[w]here a tender [of goods] has been accepted[,] . . . [t]he buyer *must* within a

reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from *any* remedy[.]" (Emphasis added.)

[¶22.]     We previously interpreted this notice requirement in *Hepper v. Triple U Enterprises., Inc.*, 388 N.W.2d 525 (S.D. 1986). In *Hepper*, we reasoned that "[t]he purpose of requiring notice within a reasonable time is to give the seller sufficient time to investigate the breach of warranty claim while facts are still fresh[,] . . .foster[ ] settlement through negotiation, permit[ ] a seller to avoid future defects, allow[ ] a seller to minimize damages, and protect[ ] a seller from stale claims." *Id.* at 527 (additional citations omitted). Importantly, "[n]otice is an element that must be specifically proven; it is not an affirmative defense" and "[n]otice of breach by summons and complaint is obviously insufficient." *Id.* at 527,529.

[¶23.]     Agrium argues that Country Pride "never even pleaded notice in its complaint and cannot provide that it ever gave Agrium anything resembling notice of the breach it claims." We agree. Notably, Country Pride, in its reply brief, responds to Agrium's notice argument by stating "notice was . . . given to Agrium in a reasonable time per the statute" without stating, nor citing to the record, when this notice was provided and through what means. Thus, Country Pride has not shown facts in the record to support its assertion that it provided reasonable notice, nor did our review of the record bear out this assertion. As a result, we affirm summary judgment on its breach of warranty claims on the basis that Country Pride failed to provide notice.

> *(b) Country Pride's negligence claim against Agrium is barred by the economic loss doctrine.*

[¶24.] In addition to its warranty theory, Country Pride also argues that Agrium is liable under a negligence theory. In UCC cases, this Court has adopted the economic loss doctrine which provides that "'economic losses are not recoverable under tort theories'" such as negligence. *Diamond Surface, Inc. v. State Cement Plant Comm'n*, 1998 S.D. 97, ¶ 24, 583 N.W.2d 155, 161 (quoting *City of Lennox*, 519 N.W.2d at 333). Rather, a plaintiff is "'limited to the commercial theories found in the UCC.'" *Id.*[10]

[¶25.] This doctrine has two exceptions. *Id.* ¶ 25. First, tort damages are not barred in cases where personal injury is involved. *Id.* ¶ 25 n.5 (citing *City of Lennox*, 519 N.W.2d at 333). Neither Country Pride nor Agrium asserts that this first exception applies in this case. Rather, the parties dispute the application of the second exception. The second exception, commonly referred to as the "other property exception," applies "when the damage is to 'other property' as opposed to the specific goods that were part of the transaction." *Id.*

[¶26.] Country Pride reasons that the "other property" exception applies because the damage was to the winter wheat crop, rather than the specific goods that were part of the transaction (the fertilizer). This Court has previously noted, "[o]ther property has been defined as damage to property collateral to the product itself." *City of Lennox,* 519 N.W.2d at 333. Examples include, "1) [a] defective heater that exploded and destroyed a major portion of a refinery" and "2) defective

---

10. The underlying purpose of the rule "is to maintain the separateness of tort law and contract law." *Lesiak v. Cent. Valley Agric. Coop., Inc.*, 808 N.W.2d 67, 83 (Neb. 2012).

brakes that hypothetically caused [a] truck to run into [a] home." *Id.* (internal footnotes omitted). However "[w]hen a defect in a component part damages the product into which that component was incorporated, economic losses to the product as a whole are not losses to 'other property' and are therefore not recoverable in tort." *Id.*

[¶27.]     Here, the urea was a component part that was later incorporated into both the fertilizer and the wheat crop. The alleged defect, the rye-contamination, damaged the fertilizer and wheat crop, resulting in lost profits. "Economic loss . . . is defined as that loss resulting from the failure of the product to perform to the level expected by the buyer and *the consequential losses* resulting from the buyer's inability to make use of the ineffective product, such as lost profits." *Diamond Surface*, 1998 S.D. 97, ¶ 25, 583 N.W.2d at 161 (quoting *City of Lennox*, 519 N.W.2d at 333). Country Pride's claimed damages are consequential losses, specifically lost profits, from defective fertilizer rather than damage to collateral property. Accordingly, Country Pride's claimed damages fall under the scope of the general rule and not the "other property" exception; thus, the economic loss doctrine bars Country Pride's negligence claim against Agrium.

> *(c) Country Pride's indemnity and contribution claim against Agrium is barred by the statute of limitations.*

[¶28.]     Country Pride's initial complaint in December 2008 did not include any claims against Agrium. On April 20, 2010, Country Pride amended its complaint to assert an indemnification claim against Agrium. Country Pride pleaded that ammonium sulfate supplied by Agrium was the source of the contamination. This

ammonium sulfate claim was later dismissed. Only Agrium's supply of urea is now at issue.

[¶29.] However, Country Pride never amended its complaint to plead that urea purchased from Agrium was the source of contamination. Indeed, Agrium was not notified that its urea deliveries to Country Pride were the subject of Country Pride's suit until October 2010.

[¶30.] SDCL 57A-2-725(1) provides, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." This Court has "consistently held that 'compliance with statutes of limitations is *strictly required* and doctrines of substantial compliance or equitable tolling are not invoked to alleviate a claimant from a loss of his right to proceed with a claim.'" *Murray,* 2010 S.D. 18, ¶ 21, 779 N.W.2d at 389 (quoting *Dakota Truck Underwriters v. S.D. Subsequent Injury Fund,* 2004 S.D. 120, ¶ 17, 689 N.W.2d 196, 201).

[¶31.] The parties agree that this action accrued when the urea was delivered to Country Pride in August 2006. Country Pride never formally commenced an action regarding the urea claim nor did it move to amend under SDCL 15-6-15(a). Agrium was not put on notice that its August 2006 urea delivery would be the subject of this suit until October 2010. As a result, Country Pride's indemnification and contribution claim against Agrium is barred by the four-year statute of limitations for an action for breach of a sales contract.

[¶32.] **3.    Dakota Gas did not have a duty to inspect Baker Trucking's vehicles.**

[¶33.] The only claim that Country Pride makes with respect to Dakota Gas is negligence. Country Pride argues that Dakota Gas, as the manufacturer of the

ammonium sulfate sold by Agriliance, had a duty to ensure that trailers used by Baker Trucking for delivery were free from contaminants, and therefore, Dakota Gas was negligent when it failed to inspect Baker Trucking's vehicles. The trial court granted Dakota Gas's motion for summary judgment on the basis that, regardless of any factual disputes, under South Dakota law, the duty to ensure a properly cleaned trailer rested solely upon the carrier, Baker Trucking. We agree.

[¶34.]     This Court has previously stated that:

> [T]he duty of furnishing suitable vehicles rests upon the carrier, and *not upon the shipper*, and the failure to discharge this duty is negligence from the consequences of which the carrier is not permitted to free himself by a stipulation in the bill of lading which devolves upon the shipper the duty of selecting vehicles which are suitable. Such a stipulation is void, as an attempt by the carrier to limit his liability against his own negligence in providing defective vehicles.

*Berry*, 24 S.D. 611, 124 N.W. at 862 (emphasis added).

[¶35.]     Based on *Berry*, we hold that the duty to provide a contaminant-free vehicle rested upon Baker Trucking, the carrier, not Dakota Gas, the shipper. "'Summary judgment in a negligence case is appropriate when the trial judge resolves the duty question in the defendant's favor.'" *Highmark Fed. Credit Union*, 2012 S.D. 37, ¶ 7, 814 N.W.2d at 415 (quoting *Hendrix v. Schulte*, 2007 S.D. 73, ¶ 8, 736 N.W.2d 845, 847). Consequently, because Dakota Gas did not breach any duty owed to Country Pride, we affirm the trial court's grant of summary judgment.

## CONCLUSION

[¶36.]     We affirm the summary judgment motions granted in favor of Agriliance, Agrium, and Dakota Gas.

[¶37.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.